TIMOTHY J. HARTNETT *vs.* PLUMBERS' SUPPLY ASSOCIATION
OF NEW ENGLAND.

Suffolk.   March 2, 1897. — October 20, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Quo Warranto — Private Corporation — Usurpation of Franchise — Injury ·
to Private Right — Remedy.*

A corporation was chartered under Pub. Sts. c. 115, for the purposes of " promoting pleasant relations among its members; discussing, arbitrating, and settling all matters pertaining to the prosperity and promotion of the jobbing plumbers' supply business; and establishing and maintaining a place for social meetings." It consisted of about twenty firms engaged in selling plumbers' supplies, and, claiming to act under its franchises, took proceedings against persons whom its members might represent to it as owing them overdue bills for plumbers' supplies, sending notices to such persons, and also notices to its members other than the creditor, as a method of compelling the alleged debtors to pay what its members demanded, by means of threatening to expose to certain dealers their alleged delinquencies, by actually informing such dealers that those persons owed overdue accounts, and by preventing them from obtaining credit from a number of dealers in goods needed in their business; and also required such persons, where the correctness of the claim was disputed, to submit the controversy to arbitration. *Held*, that a plumber against whom the corporation had so proceeded was entitled to file an information in the nature of a *quo warranto* against the corporation. ALLEN, KNOWLTON, & LATHROP, JJ., dissenting.

PETITION, under Pub. Sts. c. 186, § 17, for leave to file an information in the nature of a *quo warranto*. Hearing before *Allen*, J., who dismissed the petition, with costs; and, the petitioner having appealed, reported the case for the consideration of the full court. The facts appear in the opinion.

The case was argued at the bar in March, 1897, and afterwards was submitted on briefs to all the justices.

*S. H. Dudley*, for the petitioner.

*S. J. Elder & W. C. Wait*, for the respondent.

BARKER, J. The statutory provisions under which this petition is brought were introduced by St. 1851, c. 233, §§ 55–64, and have been continued in force without much change. See St. 1852, c. 312, §§ 42–50; Gen. Sts. c. 145, §§ 16–24; Pub. Sts. c. 186, §§ 17–25. In plain and positive terms they purport

to give relief to any person whose private right or interest has been injured, or is put in hazard, by the exercise by any private corporation of a franchise or privilege not conferred by law. In the earliest cause in which they were considered, it was said that they conferred upon the court a manifestly high power, to be exercised only upon extraordinary occasions and in aggravated cases of usurpation and encroachment. See *Hastings* v. *Amherst & Belchertown Railroad*, 9 Cush. 596, 599. These views, however, were not repeated or referred to in the succeeding cases of *Lechmere Bank* v. *Boynton*, 11 Cush. 369, *Boston & Providence Railroad* v. *Midland Railroad*, 1 Gray, 340, or *Goddard* v. *Smithett*, 3 Gray, 116.

In the present condition of society, having regard to the actual power of corporations as compared with that of natural persons whose interest they affect, we think that the exercise by a private corporation of franchises or privileges not conferred by law may be a serious usurpation and encroachment, which, when it injures or puts in hazard the private rights of any person, will justify the exercise by this court of the powers given it by the statutes under consideration. In such cases, this explicitly given remedy, like that of the writ of mandamus, should now be " regarded as an ordinary process in cases to which it is applicable." See *New England Ins. Co.* v. *Phillips*, 141 Mass. 535, 546.

The respondent corporation was chartered under Pub. Sts. c. 115. The purposes for which it was formed are stated in its charter to be those of " promoting pleasant relations among its members; discussing, arbitrating, and settling all matters pertaining to the prosperity and promotion of the jobbing plumbers' supply business; and establishing and maintaining a place for social meetings." Chapter 115 is entitled, " Of associations for charitable, educational, and other purposes," and authorizes corporations to be formed for the following purposes only : " For any educational, charitable, benevolent, or religious purpose; for the prosecution of any antiquarian, historical, literary, scientific, medical, artistic, monumental, or musical purposes ; for supporting any missionary enterprise having for its object the dissemination of religious or educational instruction in foreign countries; for promoting temperance or morality in

this Commonwealth; for encouraging athletic exercises or yachting.; for encouraging the raising of choice breeds of domestic animals and poultry; for the association and accommodation of societies of Free Masons, Odd Fellows, Knights of Pythias, or other charitable or social bodies of a like character and purpose; for the establishment and maintenance of places for reading rooms, libraries, or social meetings." Pub. Sts. c. 115, § 2. The subsequent act authorizing the incorporation of labor or trade organizations, St. 1888, c. 134, for the purpose of improving in any lawful manner the condition of employees in any lawful trade or employment, has no bearing upon the present case.

The franchises and privileges conferred upon the respondent by law are limited by the purposes enumerated in Pub. Sts. c. 115, § 2. Business corporations are formed under Pub. Sts. c. 106, or the other chapters relating to special businesses, and for such corporations to obtain a charter a capital stock is required, and there are other pre-requisites to the granting of a charter than those required of corporations formed under Pub. Sts. c. 115.

The report finds that the respondent corporation consists of about twenty firms engaged in selling plumbers' supplies. This means only that its members are persons who are interested in such firms. It takes proceedings against persons whom its members may represent to it as owing them overdue bills for plumbers' supplies, sending notices to such persons, and also notices to its members other than the creditor. The notice sent by the corporation to the person so alleged to owe an overdue account, after reciting that he has failed to settle the demand, informs him, on behalf of the corporation, that unless he shall settle the claim within ten days the members of the corporation will be notified, and that, in consequence, he may be unable to purchase any goods from any of them except for cash before delivery, suggests that, if he has any reason why such notice should not be given, he should immediately present the same to the corporation; and concludes with the threat that inattention to this will bring about the consequences above indicated. The corporation keeps in a book the name of all persons represented to it by its members to be their delinquent debtors, and provides each of its members with a book for the

purpose of having the names òf such persons entered upon such a book in the possession of each member. After the notice has been sent by the corporation to the alleged debtor, if he does not settle the claim, or present to the corporation some reason for not doing so, the corporation sends to each of its members a formal statement that the alleged debtor's name has been entered on the books of the corporation, and that by its by-laws its members are debarred from selling goods to him, except for cash before delivery, until he shall have settled. This statement orders the members of the corporation not to fail to enter the debtor's name in the book provided for that purpose, and states his name and address, the name of his creditor, and the amount of the debt.

. That the respondent claims to take such proceedings under its corporate franchises appears from its by-laws, and from the forms which it prepares and uses and sends to its members, to be used in the proceedings. The by-laws make it the duty of all members to report to the secretary any information concerning failures or financial embarrassments in the trade, and " to sell only for cash paid before delivery to customers who have unjustly failed to meet their trade contracts and obligations, and so long as that failure continues." They provide that if a member is involved as defendant in any legal proceedings growing out of his membership, and caused by his obedience to and action under the rules and by-laws of the corporation, the costs and expenses incurred shall be paid out of its funds, if the member places his case in the hands of an attorney approved by its executive committee. There is also a provision that, in cases where the correctness of accounts between members and others is disputed, the creditor shall appoint one arbitrator, the debtor another, and that the two arbitrators shall choose a third; and also that the matter may be referred to its executive committee. The blank forms prepared and issued by the respondent to be used in proceedings against persons represented to it by its members to be their debtors, are seven in number. The first is a notice to be sent by the member to the alleged debtor, stating that unless his past due account is attended to within ten days the matter will be referred to the respondent. The second is a notice from the

member to the secretary, that the first notice has been sent to the alleged debtor, and that he has not settled the account. The third is the notice from the corporation to the alleged debtor, threatening that unless he settles the account within ten days certain consequences will follow.   The fourth is a notice to be sent by the member to the secretary that the person subjected to the proceedings has failed to respond to the notice sent him by the corporation, and asking the secretary to notify every member of the facts, according to the by-laws. The fifth is the notice to be sent to the members by the secretary, informing them that the name of the person against whom the proceedings are pending has been entered on the book, and that members are debarred from selling goods to him, except for cash before delivery, until he has settled.   The sixth is a notice of settlement to be sent by the member to the secretary, and the seventh is a notice to be sent by the secretary to the members that the person subjected to the proceedings has satisfactorily settled his account, and is again entitled to the same consideration as before.

In short, these proceedings against the alleged debtors of its members, instituted by the corporation under the pretended sanction of its corporate franchises, are a method of supplanting the courts by the private machinery of the corporation ; of compelling such persons to pay what its members demand, by means of threatening to expose to certain dealers their alleged delinquencies, by actually informing such dealers that the persons owe overdue accounts, and by preventing such persons from obtaining crédit from a number of dealers in goods needed in the business which such persons are carrying on.   This private corporation assumes, in the exercise of what it claims to be the corporate privileges conferred by its charter, to require other persons to submit their controversies to arbitration, dictates the terms upon which trade shall be carried on by other persons, and requires other persons under penalties practically severe, to submit to it their reasons for their conduct in matters with which it has no concern.

A majority of the court are of opinion that the respondent's charter confers upon it no such rights.  Such proceedings are not germane to the purpose of " promoting pleasant relations

among its members," or of "establishing and maintaining a place for social meetings." The only other purpose stated in the charter is that of " discussing, arbitrating, and settling all matters pertaining to the prosperity and promotion of the jobbing plumbers' supply business." If this language is construed with that which declares the other purposes of the charter, and with our body of corporation statutes, it naturally means the improvement of the plumbers' supply business by the discussion and investigation of scientific and practical matters relating thereto, rather than a purpose to interfere with the actual conduct of the business in particular instances. Such interference would itself be a business enterprise, and would not fall within any of the purposes mentioned in Pub. Sts. c. 115, § 2, for which alone corporations may be organized under that chapter. Assuming that a corporation might be formed to prosecute the business of collecting debts due to the persons who are members of the respondent corporation, and of protecting them from selling upon credit to irresponsible customers, such a corporation would be a business enterprise, and to be chartered must have a capital stock, and must comply with the provisions of Pub. Sts. c. 106, in order to obtain a legal existence and have corporate rights and privileges.

The right of instituting and conducting such proceedings as those which the respondent assumes to institute is, therefore, not conferred by law upon it, and their institution and prosecution by its officers in its behalf are corporate acts constituting the usurpation of corporate powers and privileges, some of which are granted only to courts or other public tribunals, and others of which would never be granted by a legislature.

The remaining question is whether any private right or interest of the petitioner has been injured or put in hazard by the respondent's exercise of this usurped franchise or privilege.

It is to be noticed that the hearing upon which the petition was ordered to be dismissed was the summary hearing provided for by Pub. Sts. c. 186, § 19, at which, "if there appears probable cause to believe that the party complained of has exercised a franchise or privilege not conferred by law, and that thereby the private right or interest of the complainant has been injured or is put in hazard, leave shall be granted to file the informa-

tion," and that judgment that the corporation be excluded from such franchise or privilege can be rendered only after hearing upon the information.   Pub. Sts. c. 186, § 23.

The report states that at the hearing there was not much dispute as to any questions of fact, and we infer that, as alleged in the petition, the petitioner is a plumber, having occasion to use his credit in conducting that business; that in the course of his business he became indebted to a dealer in plumbers' supplies, who was a member of the respondent corporation; that a portion of the balance claimed by his creditor to be due was in dispute; and that while a suit to recover such balance was pending, in which he had given security by a bond to dissolve the attachment, the corporation instituted proceedings against him under its by-laws, and notified its members that his name had been entered upon its book, and that its members were debarred from selling goods to him, except for cash before delivery, until he should have settled with the member to whom he was so said to be indebted.   The report further states that it did not seem to the presiding justice that any right of the petitioner was infringed by the respondent's mode of procedure, and the petition was dismissed, with costs.

In the opinion of a majority of the court this conclusion was wrong.   Without examining all the ways in which the respondent's mode of procedure may have injured or put in hazard the petitioner's private rights or interests, we think that they were injured or put in hazard.

The credit of a tradesman is an important, and often his most considerable resource, and he has a right to rely upon and to use it in endeavoring to do business.   No one has the right to attempt to destroy or to injure his credit, unless the person so attempting can show that his own legitimate interests require such action.   Assuming that the legitimate interests of sellers of plumbers' supplies may justify such persons in informing each other that a customer of one of them has not paid for his purchases, and in agreeing with each other to sell him no goods except for cash paid before delivery, the respondent has no such justification for its interference with the petitioner's business. The respondent is a legal person other than and distinct from its members.   It is not a seller of plumbers' supplies, and has no

interest in that market, and no legitimate concern with the question of who shall purchase in that market upon credit. When, without being engaged in the trade, or being in any relation by which its legitimate interests are affected by the question whether the petitioner shall have credit in that market, the respondent assumes to notify sellers of such goods that the petitioner has not paid his accounts, and to debar a considerable number of dealers from selling to him upon credit, his right to an open market, and to proffer his credit without officious interference from persons who have no legitimate interest in the question whether he shall buy upon credit, is injured and put in hazard.

Again, one of the petitioner's private rights is that he shall not be libelled in his business or trade. Under the respondent's mode of procedure, the corporation having, as a distinct legal person, no interest in the trade, nor in the dispute between the purchaser and its member, there is no privilege to justify the communication to it or by it of the facts which it assumes to communicate. Such written communications tend to injure the purchaser in his business, and, if not justified, may be libels which injure him in his private rights, or put them in hazard, within the meaning of the statute, besides being actionable torts. See Odgers, Libel & Slander, (3d ed.) 86, 87, and cases cited; *Capital & Counties Bank* v. *Henty*, 7 App. Cas. 741. The statements concerning the petitioner published by the respondent to its members were calculated to convey to them imputations upon the petitioner injurious to him in his business, and were not made in the discharge of any public or private duty, legal or moral, in the conduct of the respondent's own legitimate affairs in matters in which its own legitimate interests were concerned. In the whole procedure the respondent acts officiously and without right, having itself no interest in the matters about which it publishes statements calculated to injure in their business persons who are not its members, and with whom it has no business or other relations save those which it usurps.

We think, therefore, that upon the report there appears probable cause to believe that the respondent has exercised a franchise or privilege not conferred by law, and that thereby the

petitioner's private right or interest has been injured, or is put in hazard, and that leave should be granted him to file an information. This makes it necessary to reverse the decree dismissing the petition. *So ordered.*

Mr. Justice Allen, Mr. Justice Knowlton, and Mr. Justice Lathrop do not concur in the result reached by the majority of the court.