HINE v. COMMERCIAL BANK OF BAY CITY.

1. TROVER—CONVERSION OF STOCK.
   Trover lies for the conversion of corporate stock.

2. SAME—DEFENSES—FRAUDULENT ASSIGNMENT.
   In an action for the conversion of shares of stock left with defendant by an assignee for cancellation and the issuance of new certificates, which were not furnished, but the stock retained until the maturity of a debt due from the assignor, and then attached, the defendant cannot show that the assignment to the plaintiff was fraudulent.

3. SAME—GENERAL ISSUE—SPECIAL DEFENSE—ATTACHMENT.
   That stock, for the conversion of which suit is brought, is held by virtue of an attachment, cannot be shown under a plea of the general issue, without notice of such defense.

4. TRIAL—REMARKS OF COURT.
   Language of the court indicating clearly to the jury his opinion of some of the important controverted facts is prejudicial error.

Error to Bay; Maxwell, J. Submitted January 24, 1899. Decided March 6, 1899.

Trover by Frederica Hine against the Commercial Bank of Bay City, Ira H. Wilder, and Charles C. Whitney. From a judgment for plaintiff, defendants bring error. Reversed.

*T. A. E. & J. C. Weadock*, for appellants.

*Frank S. Pratt*, for appellee.

MOORE, J. Plaintiff recovered a judgment against defendants, in an action of trover, for the conversion of 20 shares of the stock of the Bank Building Company, Limited. The declaration contained three counts. The plea was the general issue. The court was requested to direct a verdict in favor of Mr. Whitney and the Commercial

Bank. His refusal to do so is said to be error. It is the claim of plaintiff that on January 18, 1897, she became the owner of the shares of stock by assignment from Theodore Hine, and that on the following day the certificates of stock were left with Mr. Wilder, who was the treasurer, and one of the three directors and managers, of the Bank Building Company, Limited, with a request to cancel the certificates and issue new certificates to the plaintiff; that Mr. Wilder was at the same time cashier of defendant bank, and in active management of its affairs; that the controlling share of the stock of the Bank Building Company, Limited, was owned by the bank; that Mr. Whitney was a director in the bank, as well as in the building company; and that the bank, Whitney, and Wilder entered into an arrangement to withhold the issue of the certificates of stock to plaintiff until a debt owned by the bank against Theodore Hine matured, with a view of attaching the stock by the bank; and that this resulted in a refusal to issue to her certificates of her stock, or to recognize her ownership of it, which arrangement was carried out. She gave evidence tending to support her claim. On the part of the bank this claim was denied. It was claimed that Mr. Wilder's action was not the act of the bank; that he had no knowledge of the attachment suit until after it was commenced; and that there was no conversion of the stock in fact.

Trover will lie for the conversion of the stock. *Daggett* v. *Davis*, 53 Mich. 35 (51 Am. Rep. 91); *Hubbell* v. *Blandy*, 87 Mich. 209 (24 Am. St. Rep. 154); *Smith* v. *Thompson*, 94 Mich. 381. And we think there was testimony in relation to the conversion, and the relation of the three defendants to each other, which made it the duty of the judge to submit the question to the jury as to whether there was a conversion in fact.

Defendants sought to show that the assignment from Theodore Hine to the plaintiff was fraudulent. The circuit judge properly declined to permit this. The attach-

ment suit was not against the plaintiff, but was against a third party. · It was begun subsequent to the assignment, and subsequent to the delivery of the certificates to Mr. Wilder. *Trowbridge* v. *Bullard,* 81 Mich. 451; *McLean* v. *Medicine Co.,* 96 Mich. 479. ·

The defendants sought· to introduce by way of · defense the attachment suits against Theodore Hine. As no notice was given with the plea of the general issue, ˙this was properly refused. *Fry* v. *Soper,* 39 Mich. 727; *Frankel* v. *Coots,* 41 Mich. 75; *Eureka Iron & Steel Works* v. *Bresnahan,* 66 Mich. 489.

In his charge to the jury, the court made use of the following language:

"When that assignment (unless there is something shown to the contrary) was thus presented, and a request made, it was the duty of the corporation, within a reasonable length of time, to make a new certificate and deliver it. What is a reasonable time is usually a question of law, but in this case it is a question of fact for you to determine. In determining that question, you will bear in mind the facts as they appear: ˙*First,* that it was presented on the 19th day of· January; and, *second,* the various refusals, and the policy of delay pursued by the defendants, or some of them; and, *finally,* the attachment of the property, as has been mentioned, and the entire refusal to surrender it or to issue new stock, as I understand the evidence."

It was the claim of the plaintiff that, after the assignment was made to her, she gave Mr. Pratt a proxy to represent her stock at the meeting of the stockholders, and defendant refused to recognize Mr. Pratt as her proxy. It was claimed that this tended to show a conversion. It was claimed on the part of the defense that Mr. Pratt did not have a legal proxy, and for that reason was˙ not recognized. During the progress of the charge the following occurred:

"*Mr. Weadock:* Then I desire to ask the court to charge, as to what took place at the meeting of March 3d, that they must find· that they refused to allow Mr. Pratt as proxy, and they must show that he had a regular proxy

to represent her.   There has been no proxy shown, and it must be made in writing.

" *The Court:* He submitted the proxy to me.

·" *Mr. Weadock:* He submitted a proxy in another case.

" *Mr. Pratt:* The identical proxy.

" *Mr. Weadock:* It was not used in evidence.

" *The Court:* I think the corporation must show that he had no authority to attend that meeting.

" *Mr. Weadock:* But it is so recorded in the minutes. That is their conclusion formed at that time. . And then I desire to ask the court to instruct the jury that the purpose of the officers at that meeting must have been to exclude the plaintiff, and her representative by proxy, in order that they might convert the shares of stock, and to deny the plaintiff any right in the shares of stock.

" *The Court:* I do not regard the intention as important.   They need not have done it for that purpose. It does not make any difference what they did it for. That they assumed ownership of the property to the exclusion of the plaintiff, absolutely and solely, and excluded her and denied any right of action of hers,—the jury may find by what they did at the meeting."

We think this language of the court indicated clearly to the jury his opinion of some of the important controverted facts, and was prejudicial.   *McDuff* v. *Detroit Journal Co.*, 84 Mich. 1 (22 Am. St. Rep. 673 ).

We do not think the other assignments of error are well taken.

Judgment is reversed, and new trial ordered.

The other Justices concurred.