HERBERT L. HANDY *vs.* WILLIAM H. MINER & others.

WILLIAM H. MINER *vs.* HERBERT L. HANDY & another.

Hampden.    September 22, 1926. — December 23, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Bills and Notes*, Indorser.  *Corporation*, Officers and agents, Conversion of corporate stock.  *Conversion*, Of corporate stock.

In a suit in equity by an indorsee to enforce the provisions of a valid negotiable promissory note, proof, that the indorsee procured the note from the payee for less than its face value and that in bringing an action he was actuated by a motive to "harrow," "annoy" and "destroy" the maker of the note, is not a defence which the maker can assert at law or in equity, where no fiduciary relation between the maker and the indorsee appears.

If the treasurer of a corporation, in charge of its stock transfer books and required by its by-laws to sign its stock certificates upon presentation

of a certificate of shares duly indorsed for transfer to complete a sale, refuses to make the transfer on the ground, honestly but mistakenly believed by him to be true, that there had been an over issue of stock, and continues his refusal upon repeated requests during a period of three months, the corporation by reason of such unwarranted refusal by its treasurer is liable in terms of conversion to the owner of the stock for loss thereby sustained; but the treasurer, unless it appears that he exercised dominion over the shares and made use of them for his own benefit or the benefit of the corporation, is not liable.

If, upon presentation by the president of a corporation to the treasurer for transfer of a certificate of shares of stock standing in the president's name as an individual and duly indorsed, with the request by the president that new certificates for the shares be made out in different names, the treasurer causes the certificates for the shares to be made out in his, the treasurer's, own name, under a claim of right which was adverse to the president, the president, in a suit in equity against the treasurer, is not entitled to a decree that the treasurer return the shares to the corporation, but should have a decree ordering payment to him by the treasurer of the value of the shares as of the date of the wrongful taking by the treasurer, with interest from that date.

If the maker of a negotiable promissory note pledges stock in a corporation as a security for payment of the note and indorses in blank and delivers to the payee a certificate representing the shares, the payee indorses the note to the treasurer of the corporation and delivers it and the certificate to the treasurer, as an individual, and the treasurer then causes the shares to be transferred to his own name, the maker of the note, in a suit in equity, is not entitled to a decree requiring the treasurer to return the shares to the corporation, nor to any relief against the treasurer as an individual so long as the note, as security for the payment of which the shares were purchased, is unpaid.

Two BILLS IN EQUITY, filed in the Superior Court on December 13, 1917, and March 27, 1919, respectively, and both amended after filing. They are described in the opinion.

In the Superior Court, the bills were referred to the same master and were heard together by him. Material facts found by the master are stated in the opinion.

The suits were heard upon the master's report by *Sanderson*, J., by whose order there was entered in the first suit a final decree that the defendant Miner pay to the plaintiff Handy $1,250 with interest from June 19, 1917; $2,200 with interest from November 12, 1917; $1,000 with interest from October 20, 1917; $500 with interest from December 3, 1917; $2,500 with interest from December 23, 1915; $600 with interest from January 10, 1917; $500 with interest

from January 24, 1918; $2,000 with interest from December 15, 1917; in all, to the date of the decree, June 28, 1922, $13,772.37; and that the plaintiff pay the defendant $6,250 "as a part of the purchase price of five hundred shares of the common stock purchased by the plaintiff of the defendant when the same shall be received as dividends thereon." From this decree, the defendant Miner appealed.

In the second suit, the final decree set out in the opinion was entered by order of *Sanderson*, J., on the same date as that in the first suit. From it, both the plaintiff and the defendants appealed.

The case was submitted on briefs.

*E. W. Carman & W. J. Bartnett*, for William H. Miner.

*J. B. Ely & F. M. Kingsbury*, for Herbert L. Handy and another.

*C. E. Bell, amicus curiae*, submitted a brief.

PIERCE, J.   On March 28, 1919, by a stipulation filed in court, the parties to the above entitled actions or suits agreed that the bill of complaint entitled William H. Miner *v.* Herbert L. Handy et al. should be considered "as a separate cross bill" in the bill of complaint of Herbert L. Handy *v.* William H. Miner et al., and "that all the issues therein may be determined as in one action." Since the master's report was filed, the legal name of the defendant W. H. Miner Chocolate Company has been changed to the "Handy Chocolate Company."

The suit of Handy *v.* Miner is a bill to reach and apply certain shares of stock of the defendant W. H. Miner Chocolate Company alleged to stand on the books of said company in the name of the defendant William H. Miner. The bill seeks recovery upon ten promissory notes alleged to have been issued by said Miner, some of them payable directly to the plaintiff, Herbert L. Handy, and some which, indorsed by Handy, he had been obliged to pay as indorser.

The master found the defendant Miner owed the plaintiff on eight notes $10,550, and the further sum of $2,739.28 as interest, computed from the dates respectively of several notes to the filing of his report on March 28, 1921. He

found in favor of Miner on the note described as "The note for sixty-two hundred fifty dollars, ($6250) dated July 26, 1917," and on the note described as "The claim on notes or for money paid, for four thousand three hundred forty-seven dollars and forty-two cents." The master further found that Miner owed Handy $500 on a note dated January 24, 1918, payable sixty days after date to one Frank G. Aldon, which was indorsed by Aldon to Handy "for no consideration"; that Miner owed Handy $2,000 on a note Miner gave one Schroeter, payable February 1, 1918, which was purchased by Handy for $1,000 and the sale "included seventy-two shares of the common stock of the W. H. Miner Chocolate Company." The further finding of the master that the plaintiff Handy "will owe to Mr. Miner the sum of six thousand two hundred fifty dollars (6250) when the same shall be received from dividends on the five hundred shares (500) of stock sold by Mr. Miner to Mr. Handy" is now inoperative by reason of the stipulated fact that "the said W. H. Miner Chocolate Company, now called Handy Chocolate Company, has sustained heavy operating losses each year for several years past, has paid no dividends during such period, has ceased to do business and is now in process of liquidation, all of its assets having been sold. . . . is insolvent and the shares of the capital stock of said corporation are now worthless."

The numerous exceptions of the plaintiff, duly filed, were overruled, and the report of the master was confirmed by an interlocutory decree, from which no appeal has been taken. The defendant Miner took no objection to the master's report, appealing to this court from the final decree filed June 28, 1922. Referring to this appeal of the defendant, the plaintiffs in their brief say, "We are not particularly interested to change the decree because the defendant Miner is financially worthless, except for such sums as he may succeed in recovering against Handy." We treat this statement as a waiver of any right to contest the terms of the final decree.

In support of his appeal, Miner contends mainly that Handy should not be allowed to recover more than he paid

for the note given January 10, 1917, to H. D. Foss and
Company, Inc.; that he should not be allowed to recover
more than he paid for the note given Frank G. Aldon, dated
January 24, 1918; and that he should not be allowed to re-
cover more than the amount he paid for the note given D.
Schroeter, dated December 15, 1917. No question is made
but that the above described notes were made and delivered
by Miner to the order of H. D. Foss and Company, Inc., to
the order of Frank G. Aldon, and to the order of D. Schro-
eter, on the respective days written thereon. No question
is raised to the effect that as between Miner and the payee
of each note Miner had any defence thereto at law or in
equity; nor is it denied that the payee in each note indorsed
that note to "H. L. Handy."

There is nothing in these contentions. The indorsee of a
note is in no worse position than the payee of that note, and
the maker cannot attack the transfer of the instrument on
the ground of undue influence exercised upon the indorser,
*Carrier* v. *Sears*, 4 Allen, 336; nor for want of consideration
for the transfer, *Gould* v. *Leavitt*, 92 Maine, 416, 420. For a
stronger reason it is obvious that proof that the indorsee in
bringing an action on the valid note had a motive to "har-
row," "annoy" and "destroy" the maker of the note is not
a defence to that note which the maker can assert at law or
in equity. As regards the collection of these notes, there
was no fiduciary relation between Miner, the maker, and
Handy, the indorsee, as Miner contends. The decree, how-
ever, should be modified so as to include interest from the
due date of the several amounts found owing the plaintiff
Handy until the time of the final decree.

The suit entitled William H. Miner v. Herbert L. Handy
et al. is an action brought subsequent to the suit of Herbert L.
Handy v. William H. Miner et al., above considered, and the
questions for decision raised therein are accurately sum-
marized by the master as follows:

"First. The situation arising out of an agreement made
between Mr. Miner and Mr. Handy on March 20, 1914,
relating to the sale by Mr. Miner to Mr. Handy of five
hundred shares of common stock of the W. H. Miner Choco-

late Company, which transaction was modified, as alleged by Mr. Miner, by an agreement made by and between the parties on October 19, 1914, relating to the sale and purchase of an additional five hundred (500) shares of the same stock.

"Second. A claim for damages for eight hundred forty (840) shares of the common stock of the W. H. Miner Chocolate Company alleged to have been delivered in June, 1916, by Mr. Miner to Mr. Handy under threat and duress.

"Third. A claim for damages for refusal and failure to transfer stock out of a certificate for fifteen hundred (1500) shares of the common stock owned by Mr. Miner and presented for transfer in September, 1917, by reason of which seven hundred sixty-four (764) shares pledged by Mr. Miner were sold at a loss.

"Fourth. A claim for damages for the conversion of four hundred sixty (460) shares of common stock owned by Mr. Miner.

"Fifth. A claim for the conversion of seventy-two (72) shares of the common stock of W. H. Miner Chocolate Company, which were pledged with the note given by Mr. Miner to D. Schroeter.

"Sixth. A claim for damages for slanderous statements alleged to have been made by Mr. Handy in regard to Mr. Miner."

The case was referred to a master to find the facts and make report. Upon the coming in of the report, by an interlocutory decree the court overruled the exceptions duly taken by the defendants, and confirmed the report. No appeal from the interlocutory decree was taken by plaintiff or defendants. The defendants excepted to the denial by the court of thirteen requests for rulings of law. No bill of exceptions was filed by the defendants or allowed by the court. A final decree was entered in the following form:

"This case came on to be heard at the April, 1922, sitting, and was argued by counsel, and thereupon, the special master's report having been confirmed, and upon consideration thereof, the parties having stipulated that this bill may be considered as in the nature of a cross bill to the bill of complaint filed by said Handy against Miner, et al, No.

13578, and the parties having further stipulated that all issues in said suits may be determined as in one action, and it appearing by a decree of the court entered since the master's report was filed, that the legal name of the defendant corporation has been changed to the Handy Chocolate Company, it is ordered, adjudged and decreed:

"1. That the defendants pay to the plaintiff Miner the sum of $21,392, with interest from November 1, 1917, amounting in all at the date of the entry of this decree to $27,328.97, being the damage sustained by plaintiff Miner as a result of the refusal of defendants Handy and the W. H. Miner Chocolate Company (now the Handy Chocolate Company) to transfer certificate No. 30 for fifteen hundred shares of the common stock of the W. H. Miner Chocolate Company (now the Handy Chocolate Company) as found by the special master, and that execution issue therefor.

"2. That defendant Handy return to W. H. Miner Chocolate Company (now the Handy Chocolate Company) three hundred ninety-five shares of the common stock of said corporation, converted by him November 5, 1917, out of certificate No. 30 for fifteen hundred shares, and fifteen shares of the said common stock, converted by him May 11, 1918, out of said certificate No. 30 together with seventy-two of the said common shares given by plaintiff Miner as collateral to one Schroeter, December 15, 1917, and converted by Handy, as found by the special master.

"3. That defendant Handy pay to plaintiff Miner the sum of $2,000, being the damage sustained by plaintiff Miner as a result of slanderous statements made by said Handy, as found by the special master.

"4. That the defendant Handy be and he hereby is enjoined from selling, encumbering or in any way disposing of the five hundred shares of the common stock of the W. H. Miner Chocolate Company (now the Handy Chocolate Company) sold by the plaintiff to him, and to be paid for in part by dividends earned on said stock as found by the master until the sum of $6,250 shall be received as dividends thereon, and paid to the plaintiff as ordered in the final decree in Handy *vs.* Miner et al, No. 13578.

"And the defendants are hereby directed to pay the plaintiff costs amounting to $57.78, . . . and execution is to issue therefor."

From this decree the plaintiff and defendants severally appealed.

The defendants in support of their appeal contend that the plaintiff is not entitled on the master's report to recover from the defendant W. H. Miner Chocolate Company, or from Herbert L. Handy, damages for the refusal and failure of that company or of Handy to transfer shares of stock in the defendant corporation, by reason of which seven hundred sixty-four shares pledged by Miner were sold at a loss.

The facts found by the master upon which the first paragraph of the final decree must rest in substance are as follows: William H. Miner, on or about July 15, 1915, received certificate No. 30 for fifteen hundred shares of the common stock of the W. H. Miner Chocolate Company, which he pledged on that day to William C. Peyton, of New York City, to secure a note of $8,693.07, given by him to Peyton. The note signed by Miner in the usual form of a collateral note, with power of sale, was accompanied by an assignment of the stock certificate No. 30. In October Miner gave Peyton by assignment duly executed two hundred fifty shares of the common stock of the W. H. Miner Chocolate Company, to be delivered out of the pledged certificate, No. 30, which remained in the possession of Peyton until about September, 1917.

At this time Miner believed he had found a purchaser for a sufficient amount of stock out of this certificate so that he could sell some of the same and pay Peyton. At the request of Miner, Peyton delivered to him certificate No. 30, Miner being not only indebted to Peyton but also president of the W. H. Miner Chocolate Company. The certificate was delivered to Miner so he might break it up, sell some of the stock and pay Peyton, the agreement being that if the sale was not consummated the certificate should be returned to Peyton. Miner brought the certificate to the office of the W. H. Miner Chocolate Company and had the same pasted in the book. He instructed the book-

keeper not to mark the certificate "cancelled." He then made out certificates for twelve hundred fifty shares cut up in different ways, and signed them, after which he presented them to Handy, who was treasurer of the company, for his signature. Handy refused to sign the certificates or deliver them, claiming there was an overissue of stock. This request was made again in October, and in November, 1917, and similar refusals were made by Handy. The master finds there was no overissue of stock at this time as a fact; but finds there was extreme confusion in the stock books and that Handy honestly believed that Miner owed him a certain amount of stock, and honestly believed that there was an overissue of stock. When the requests in September, October and November were made there was no injunction regarding the issue of stock by the company, but in the very last part of December, 1917, an injunction did issue which had not been dissolved when the report was filed in March, 1921.

Later, as the stock could not be delivered, on February 25, 1919, Peyton sold it at public auction pursuant to the terms of the promissory note and the power of sale contained therein. At the sale Peyton purchased seven hundred sixty-four shares of said stock for $9,168, and became the owner of the same. The master found the fair market value of the stock when sold was $40 per share; and that the difference between that value and the price obtained was $28, in all $21,392, and was the damage sustained by the plaintiff.

It is settled law in this Commonwealth that a business corporation has a duty imposed on it by law to issue new certificates of its stock to persons entitled to have such certificates upon the transfer or offer to transfer the old certificates to the corporation; and that an implied promise arises from such duty, for the performance of which an action will lie for the benefit of the holder of shares or for the benefit of his assignee, the action to be brought in the name of the assignee where the corporation or its officers wrongfully refuse to issue such certificates. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90. *Bond* v. *Mount Hope Iron Co.* 99 Mass.

505, 507. *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 17. Upon the master's findings of fact, it is plain the corporation through its treasurer had full opportunity between the time of its first refusal to issue the certificates presented to its treasurer, Handy, in September, 1917, and its refusal to issue the certificates in October, 1917, and again in November, 1917, to ascertain with an absolute certainty whether or not such certificates if issued would be an overissue of its stock. There was no overissue of stock, and the refusal of the treasurer to issue the certificates was a wrong to the plaintiff Miner, compensable in terms of conversion. It follows that the decree, in so far as it charged the corporation with the loss sustained by Miner and interest thereon, must be affirmed.

The decree in so far as it charged the defendant, Herbert L. Handy with such loss cannot be affirmed. Handy was guilty of no misfeasance; he exercised no dominion over the shares of stock of Miner or made any use of them for his own benefit or that of the corporation, as was the case of the defendants in *Hine* v. *Commercial Bank of Bay City*, 119 Mich. 448, and in the somewhat similar situation of the defendant in the case of *Crohon & Roden Co. Ltd.* v. *Rudnick*, 232 Mass. 555, 557. In the bare matter of making or refusing to make the transfers on the books of the corporation Handy, as treasurer, acted for the corporation and not for Miner, the owner of the stock out of which the new certificates were to be taken. In such a case there was no privity of contract between Miner and Handy, and there was no duty of performance implied in the law, which, in default, gave rise to an action in tort or upon the case for damages. *French* v. *Fuller*, 23 Pick. 108, 109. *Weston* v. *Gibbs*, 23 Pick. 205, 207. *Brown Paper Co.* v. *Dean*, 123 Mass. 267. *Tibbetts* v. *Wentworth*, 248 Mass. 468, 472.

As a ground of appeal the plaintiff Miner contends that item "2" of the final decree is erroneous in that it provides in substance that the defendant Handy shall return to W. H. Miner Chocolate Company (now the Handy Chocolate Company) three hundred ninety-five shares of the common stock converted by him November 5, 1917, "out of certi-

ficate No. 30," and fifteen shares of the common stock converted by him May 11, 1918, "out of said certificate No. 30." The complaint is well founded. The stock represented by certificate No. 30 was the property of Miner when the certificates for three hundred ninety-five shares and fifteen shares respectively were unlawfully taken out of it by Handy under a claim of right which was adverse to the title of Miner. By his conduct in relation to the stock of Miner, Handy converted four hundred ten shares of stock, and thereby became liable in damages to Miner and not to the corporation for the value of the stock on the days of its conversion and for interest on such ascertained value until the entry of a final judgment.

The plaintiff Miner makes the further contention that item "2" of the final decree is erroneous in that it orders seventy-two shares of the common stock, given by Miner as collateral to one Schroeter on December 15, 1917, be returned to the corporation. The decree is erroneous in this regard for the reason that the corporation as such had no title to the stock or right to its possession when, as the decree alleges, it was converted by Handy. However, the plaintiff Miner is not on the record entitled to a decree that this stock shall be transferred to him or that he shall receive damages for its conversion. Handy purchased of Schroeter the note to which the seventy-two shares were attached as collateral security. The purchase of the note carried with it the security, and Handy stood in the same relation to it thereafter as Schroeter did before the sale of the note which the stock secured. Although Handy caused the stock to be transferred to his own name, he at all times had possession and control of the title to the stock and at all times could have delivered the stock to Miner or to his nominee if Miner or his nominee had tendered or paid the note which the stock secured. In these circumstances Handy did not convert the stock and is not answerable for the stock itself or in damages to Miner or to the corporation. *Wood* v. *Hayes*, 15 Gray, 375. *Day* v. *Holmes*, 103 Mass. 306. *Ritchie* v. *Burke*, 109 Fed. Rep. 16.

As to item "2" of the decree, it results that Handy should

be found to owe Miner $15,800 for three hundred ninety-five shares of stock at $40 per share on November 5, 1917; and $750 for fifteen shares of stock at $50 per share on May 11, 1918; with interest on each of these items from the date of its conversion until the entry of the final decree in the Superior Court after rescript.

What has been said disposes of all issues argued by any party to the bills; all other possible contentions are deemed to be waived.

In the action entitled William H. Miner *v.* Herbert L. Handy et al. item numbered "1" of the final decree is to be modified by striking out "with interest from November 1, 1917, amounting in all at the date of the entry of this decree to $27,328.97"; and inserting in place thereof, the words "with interest to the date of the entry of the final decree in the Superior Court after rescript from this court." Item numbered "2" is to be stricken out and modified so as to read: "The defendant Handy shall pay to the plaintiff Miner $15,800 and interest thereon from November 5, 1917, until final decree in the Superior Court after rescript from this court; and shall also pay to the plaintiff Miner $750 and interest thereon from May 11, 1918, until final decree in the Superior Court after rescript from this court." Item numbered "3," ordering the defendant Handy to pay the plaintiff $2,000, is not questioned in the brief of the defendant Handy and is affirmed. Item numbered "4" has ceased, in the changed condition of the corporation, to have any force and it therefore may be disregarded.

Because of the stipulation and because a final balancing of the accounts between the parties cannot readily be arrived at through the medium of these suits, it is ordered that the final decree in each suit be reversed, that the cases be consolidated and that they be remanded to the Superior Court to determine, consistently with this opinion, the balance of the account between the parties. *Lumiansky* v. *Tessier*, 213 Mass. 182, 189.

*Ordered accordingly.*