MARJORIE D. ROSS *vs.* LOUIS F. WRIGHT.

Plymouth. March 9, 1932. — May 24, 1934.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD. JJ.

*Actionable Tort. Unlawful Interference.*

A cause of action was not stated in the declaration in an action of tort by the granddaughter of a shareholder of a business trust against the clerk of the trust, whose duties, among others, were to have custody of the stock certificate book of said trust and to make out certificates for all transfers of the shares thereof, where the allegations were merely that the defendant refused to comply with an order by the shareholder, accompanied by a tender of a certificate of his shares, to transfer them to the plaintiff, there being no allegation that the shareholder was under any legal or moral obligation to give the plaintiff the stock; that he ever promised her that he would give it to her; that she knew of his intention to give it to her; that she changed her position in reliance upon any such promise or knowledge, or that she had any right or interest in the stock.

It did not appear from the allegations of the declaration above described that the defendant had violated any duty toward the plaintiff.

TORT. Writ dated July 11, 1931.

The declaration and a demurrer by the defendant are described in the opinion. The demurrer was heard by *Weed*, J., and was sustained. Judgment was entered for the defendant. The plaintiff appealed.

*C. G. Willard*, for the plaintiff.

*H. K. Stone*, (*E. H. Fletcher*, with him,) for the defendant.

FIELD, J. The declaration in this action of tort is as follows: "The plaintiff says that she is the granddaughter of one Ellery C. Wright, late of Brockton, Massachusetts, who deceased on August 1, 1925; that said Ellery C. Wright for a long time prior to and at the time of his decease, was the owner of one thousand seven hundred sixty-seven shares of stock in the Woodard & Wright Last Company, a business trust having a usual place of business in Brockton, Massachusetts; that said Ellery C. Wright for many years next prior to his decease was the president of said company; that said defendant Louis F. Wright was at said time the clerk of said business trust and as such clerk it was his duty to have custody of the stock certificate book of said trust and to make out certificates for all transfers of the shares of said business trust; that on or about July 13, 1925, said Ellery C. Wright, then confined to his house with sickness from which he died within three weeks from said date, called said Louis F. Wright, his son, to his bedside and directed him to make out a certificate of fifty shares of his stock in said Woodard & Wright Last Company in the name of the plaintiff and to deliver said certificate to the plaintiff, or to him for the plaintiff, duly tendering to said Louis F. Wright for the purpose of said transfer the shares which he held. Said Ellery C. Wright also directed said Louis F. Wright to make out certificates of fifty shares each and deliver the same to the plaintiff's brother and two sisters, or to him for said brother and sisters. As clerk of said business trust it was said Louis F. Wright's duty to make all transfers of shares and at the time said Louis F. Wright visited his father as aforesaid, he had the stock transfer book with him and was able to make said transfers. Said Louis F. Wright, however, refused to make out and to deliver a new certificate of said shares to the plaintiff, or to him for the plaintiff, unless his father, said Ellery C. Wright, would execute and give to him and to each of his two sisters a certificate of three hundred shares each of the stock of said company. Said Ellery C. Wright refused to do this. Thereupon, Louis F. Wright refused to make out said certificates or make said transfer, and never did make them

out, or make said transfer, and the same were never made out or transferred. Immediately thereafter said Ellery C. Wright became mortally sick and never in any manner completed the proposed gift to the plaintiff, although he attempted so to do but was unable because of said sickness. Wherefore, the plaintiff has been damaged by the defendant's interference with and hindrance of said proposed gift."

The defendant demurred, alleging ten grounds of demurrer. The demurrer was sustained on three grounds, as follows: "The plaintiff's declaration sets forth no cause of action against this defendant"; "There is no cause of action for the interference with a voluntary gift"; and "It does not appear by the plaintiff's declaration that the defendant has violated any duty towards this plaintiff." Thereafter, as the plaintiff made no motion for amendment to the declaration, judgment for the defendant was ordered. The plaintiff appealed from the order sustaining the demurrer and from the order for judgment.

The demurrer was sustained rightly on the ground that the declaration sets forth no cause of action.

The plaintiff seeks to bring herself within the principle underlying tort actions for so called malicious interference generally: that an intentional invasion of a legally protected interest without legal justification creates liability. See *Walker* v. *Cronin*, 107 Mass. 555, 564; *Moran* v. *Dunphy*, 177 Mass. 485, 487; *Berry* v. *Donovan*, 188 Mass. 353, 355–356; *Lewis* v. *Corbin*, 195 Mass. 520; *McGurk* v. *Cronenwett*, 199 Mass. 457, 461–462; *Lopes* v. *Connolly*, 210 Mass. 487, 494; *Anderson* v. *Moskovitz*, 260 Mass. 523, 526. The declaration in the present case does not state a cause of action against the defendant unless it alleges facts showing that the plaintiff had an interest which was legally protected against the alleged interference of the defendant and that such interference was the legal cause of damage to the plaintiff. *Lewis* v. *Corbin*, 195 Mass. 520, 527. Since justification is an affirmative defence (see *Hartnett* v. *Plumbers' Supply Association of New England*, 169 Mass. 229, 235; *Godin* v. *Niebuhr*, 236 Mass. 350–351), a cause

of action can be stated without negativing justification. It "is enough to allege and prove the conduct and effect, leaving the defendant to justify if he can." *American Well Works Co.* v. *Layne & Bowler Co.* 241 U. S. 257, 259.

With reference to the nature of the plaintiff's alleged interest, it is to be observed that the facts alleged in the declaration do not show that she had any right against the defendant or in the stock in question apart from the transaction between the decedent and the defendant; that any contract was entered into between the plaintiff and the decedent, any completed gift of the stock made by the decedent to the plaintiff, or any trust of such stock created by the decedent for her benefit; that the plaintiff in any manner acquired any property right in such stock, or that any right of action by the decedent against the defendant or the business trust for failure to transfer the stock was assigned to the plaintiff; that any relation existed between the decedent and the plaintiff except that of grandfather and granddaughter; that the decedent was under any legal or moral obligation to give the plaintiff the stock; that he ever promised her that he would give it to her; that she knew of his intention to give it to her, or that she changed her position in reliance upon any such promise or knowledge.

With reference to the nature of the defendant's alleged interference it is to be observed that the facts alleged in the declaration do not show that in refusing to transfer the stock the defendant acted with spite or ill will toward the plaintiff or anybody else, or in combination with any other person or persons in pursuance of a conspiracy.

The plaintiff's case rests solely upon the ground that the defendant, as a single individual, by refusing to make a transfer of the stock in question, intentionally, but not malevolently, interfered with the completion of an attempted gift of such stock by the decedent to the plaintiff, that is, with the plaintiff's expectancy of receiving such stock as a gift.

Protection is accorded against interference by a third person with an existing contract even when such contract is terminable at the will of the parties thereto. *Moran* v.

*Dunphy,* 177 Mass. 485. *Berry* v. *Donovan,* 188 Mass. 353, 360. But in *Minasian* v. *Osborne,* 210 Mass. 250, 255, where the court was dealing with the "plaintiffs' contractual rights to labor . . . terminable at will," it was said that while those rights "were entitled to protection against wanton interference . . . they were not so assured or valuable in their nature as are valid contracts for continued service for a definite period. It may well be that a stronger reason might be needed to justify interference with such contracts than with those here in question." Protection, however, is not accorded against indirect interference which is remote from the damage. See *Anthony* v. *Slaid,* 11 Met. 290; *Chelsea Moving & Trucking Co. Inc.* v. *Ross Towboat Co.* 280 Mass. 282, 287. Protection is accorded also to the "right to carry on business, that is, to make contracts without interference," though this is "an altogether different right from that of being protected from interference with . . . rights under a contract already made," and interference therewith may be more readily justified. *Beekman* v. *Marsters,* 195 Mass. 205, 211–212. In neither case, however, is it always essential that the means of intentional interference employed be unlawful *per se* if such interference is not for a justifiable purpose (*Walker* v. *Cronin,* 107 Mass. 555, 563–564, *Hartnett* v. *Plumbers' Supply Association of New England,* 169 Mass. 229, 235–236, *Wheeler-Stenzel Co.* v. *American Window Glass Co.* 202 Mass. 471, 473, *Anderson* v. *Moskovitz,* 260 Mass. 523, 526), but even some contracts already made are of such a character that rights thereunder are not protected against intentional interference by means not in themselves unlawful. See *Conway* v. *O'Brien,* 269 Mass. 425. Moreover, in *Herbits* v. *Constitution Indemnity Co. of Philadelphia,* 279 Mass. 539, 542, protection of possible, but not assured, benefits under an existing contract not terminable at will against interference, intentional though not malevolent, by means not unlawful *per se* was refused without consideration of the matter of justification. And, ordinarily, interference by means of a mere refusal of an individual to do what he is not bound to do is not actionable, irrespective

of the intention which prompts such refusal. _H. D. Watts Co._ v. _American Bond & Mortgage Co._ 267 Mass. 541, 555–556.

The plaintiff's expectancy of receiving as a gift property which she had no special right to acquire is a much less definite right — if it properly may be described as a right — than the right of a party to an existing contract to the benefits thereof. It is even less definite than the right of a person to carry on a trade or business — a right which is regarded as so definite as to receive protection in an action for slander without proof of special damage. _Craig_ v. _Proctor,_ 229 Mass. 339, 340–341. See also _Hartnett_ v. _Plumbers' Supply Association of New England,_ 169 Mass. 229, 236.

It has never been held by this court, and no case elsewhere so holding has been brought to our attention, that an action of tort for malicious interference can be maintained for interference by a means not unlawful in itself, with an expectancy of receiving a gratuity, but this fact is not conclusive against the plaintiff. See _Nolin_ v. _Pearson,_ 191 Mass. 283, 290. In _Lewis_ v. _Corbin,_ 195 Mass. 520, however, it was strongly intimated, though not decided, that a legatee in a codicil to a will, a relative of the testatrix, who was deprived of a legacy purported to be given thereby through the defendant's fraud in inducing the testatrix to execute such codicil invalidly, could maintain an action of tort for malicious interference against the defendant if his fraud continued to operate until the death of the testatrix. The court said: "Plainly such fraudulent conduct was a wrong upon the plaintiff as well as upon the testatrix." Page 525. See _Coe_ v. _Ware,_ 271 Mass. 570, 573. But in _Lewis_ v. _Corbin_ the defendant's demurrer was sustained on the ground that the declaration did not sufficiently allege that his fraud continued operative until the death of the testatrix so that it was the legal cause of damage to the plaintiff. It is apparent that the intimation of the court that but for this defect in the declaration an action might be maintained by the intended legatee was based upon an allegation of employment by the defendant

of a means of interference with the plaintiff's expectancy of a legacy which was a wrong toward the testatrix, as well as toward the plaintiff, and there was no intimation that an action would lie where the interference was not by means of fraud, duress or undue influence upon the testatrix — in short, where the means of the interference was not unlawful in itself. The right of a person to receive property by gift in accordance with an orally expressed intention of the owner thereof to make such a gift is, at least, no more definite than the right of a person named as legatee in an invalid will to receive a legacy. No case which has come to our attention goes farther in protecting a right so indefinite as the expectancy of a legacy or a gift than *Lewis* v. *Corbin*. Compare, however, cases in which there are indications that such an indefinite right is not protected against interference or that the protection accorded is more restricted. *Hutchins* v. *Hutchins*, 7 Hill, 104, 109. *Simar* v. *Canaday*, 53 N. Y. 298, 302. *Hall* v. *Hall*, 91 Conn. 514, 518–520.

The declaration, however, alleges no act on the part of the defendant which was wrongful toward the decedent. It alleges that it was the duty of the defendant as "clerk of said business trust" to "make all transfers of shares." Though the business trust was not subject to the provisions of the stock transfer law (G. L. [Ter. Ed.] c. 155, §§ 24–46), the declaration cannot be construed as alleging that the clerk of the business trust had any duty to transfer shares different from the duty of a treasurer of a corporation to make such a transfer. Such a treasurer would owe no duty to an owner of stock to make a transfer on the books of the corporation "which, in default, gave rise to an action in tort or upon the case for damages." The owner's right of action would be against the corporation. *Handy* v. *Miner*, 258 Mass. 53, 62, and cases cited. The duty of the treasurer of a corporation would be to the corporation only and the alleged duty of the defendant here would be to the business trust only. See *Coe* v. *Ware*, 271 Mass. 570, 573. And in neither case would the proposed transferee have any greater right than the owner of the

stock in an action based directly upon the refusal to transfer stock. The declaration, therefore, does not state a cause of action within *Lewis* v. *Corbin*, 195 Mass. 520. Speaking more generally, it does not state a cause of action if interference with the plaintiff's expectancy to be actionable must be by a means unlawful in itself toward either the decedent or the plaintiff.

The view of the law most favorable to the plaintiff would be that her alleged expectancy of receiving property by gift, in spite of its indefinite character, is entitled to as complete protection against intentional interference as rights under existing contracts or the "right to carry on business, that is, to make contracts without interference." As already pointed out, in such cases, subject to some limitations, protection is accorded against intentional interference without legal justification though the means of such interference is not in itself unlawful. The gist of the action is the intentional interference. See *Wheeler-Stenzel Co.* v. *American Window Glass Co.* 202 Mass. 471, 473; *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470, 478. But even in such cases no action lies for mere failure to act, which, though intentional, is not in pursuance of a conspiracy (see *Pickett* v. *Walsh*, 192 Mass. 572, 582; *Willett* v. *Herrick*, 242 Mass. 471, 478–480), where the defendant is under no duty to act. *H. D. Watts Co.* v. *American Bond & Mortgage Co.* 267 Mass. 541, 555–556. *Davis* v. *New England Railway Publishing Co.* 203 Mass. 470, 478, is distinguishable since, in that case, the refusal to act amounted to an implied misrepresentation. The present case stands on no different ground by reason of the duty which the defendant as agent of the business trust owed to his principal than does an ordinary case of the mere refusal of an individual to act where he has no duty to act. The alleged duty of the defendant to his principal was not in itself sufficient to create a duty to the decedent or to the plaintiff. The mere refusal of the defendant to perform his duty to the business trust, therefore, was not an actionable wrong on his part to the decedent — the proposed transferor. *Handy* v. *Miner*, 258 Mass. 53, 62. And such refusal,

without more, was not a greater wrong to the plaintiff — the proposed transferee. We think that, even if the plaintiff's expectancy is of such a nature as to be legally protected against intentional interference, it would be an unwarranted extension of the principle underlying actions of tort for malicious interference to hold that an intended transferee of stock can maintain an action against a transfer officer for refusal, in the circumstances here alleged, to perform his duty as such officer when the intended transferor cannot maintain an action based upon such refusal.

It follows from what has been said that the demurrer was also sustained rightly on the ground that "It does not appear by the plaintiff's declaration that the defendant has violated any duty towards this plaintiff." Whether the demurrer was also sustained rightly on the ground that "There is no cause of action for the interference with a voluntary gift" need not be decided.

The order sustaining the demurrer and the order for judgment must be affirmed. *Morrill* v. *Crawford*, 278 Mass. 250, 256–257.

*So ordered.*