Elizabeth S. Caverno *vs.* Ernest W. Fellows & others.

Middlesex.     November 6, 1936. — May 26, 1938.

Present: Rugg, C.J., Field, Donahue, & Qua, JJ.

*Unlawful Interference.     School and School Committee.     Words,* "Malice."

An action for alleged unlawful interference, on the part of the plaintiff's immediate superior teacher in a high school, of the principal, and of the superintendent of schools, with the plaintiff's right to continue as a teacher under tenure could not be maintained on evidence merely that the defendants made reports of conduct of the plaintiff which

resulted in her dismissal by the school committee, there being no evidence that the conduct of any of the defendants was actuated by ill will toward, or a purpose to harm, the plaintiff, rather than by a justifiable purpose to perform their respective duties.

. TORT. Writ in the Superior Court dated November 23, 1933.

The case previously was before this court when, in a decision reported in 286 Mass. 440, an order sustaining a demurrer to the declaration was affirmed. Thereafter the declaration was amended and the case was tried before *Brogna*, J.

*F. C. Zacharer,* for the plaintiff.

*C. W. Wonson,* for the defendants, submitted a brief.

FIELD, J. This case — previously before this court in 286 Mass. 440 — is an action of tort brought by the plaintiff against the defendant Fellows, superintendent of schools of the city of Gloucester, the defendant Johnson, principal of the high school of said city and the defendant Harris, supervisor of English in said high school, for malicious interference with the plaintiff's contract of employment as a teacher in said high school and maliciously procuring her dismissal as such teacher by the school committee of said city. A motion of the defendants for a directed verdict in their favor was granted, and a verdict was returned accordingly. The plaintiff excepted.

The verdict was directed rightly.

There was evidence that the plaintiff taught in the high school each year from the fall of 1925 until November 17, 1932, having had tenure of office and served at the discretion of the school committee after the school year 1927–1928 (see G. L. [Ter. Ed.] c. 71, § 41; *Duffey* v. *School Committee of Hopkinton*, 236 Mass. 5, 9); that the plaintiff on November 17, 1932, was injured in an automobile accident; that thereafter she had not taught in any school, had been out of employment and had made no effort to obtain employment; that on September 12, 1933, she received a letter from the school committee notifying her that the committee would vote on her proposed dismissal on the ground of insubordination and being temperamentally unfit to teach;

that she requested a hearing, and such a hearing was had on September 25, 1933, before the school committee, at which she was present with counsel; and that later she received notice that, at a meeting of the school committee on October 9, 1933, she was dismissed as a teacher. See G. L. (Ter. Ed.) c. 71, § 42.

The plaintiff seeks to recover in this action on the ground of malicious interference by the defendants with her right to the position of teacher in the public schools of the city of Gloucester. The general principle governing such actions is that "an intentional invasion of a legally protected interest without legal justification," which is a "legal cause of damage to the plaintiff," creates liability. *Ross* v. *Wright*, 286 Mass. 269, 271, and cases cited. The plaintiff's right to the position of teacher was a "legally protected interest," even though her employment as such was terminable by the school committee in accordance with the statutory provisions for dismissal (G. L. [Ter. Ed.] c. 71, § 42), and, so far as appears, was terminable by her at will. *Moran* v. *Dunphy*, 177 Mass. 485, 487. *Berry* v. *Donovan*, 188 Mass. 353, 360. *Ross* v. *Wright*, 286 Mass. 269, 272–273. *Caverno* v. *Fellows*, 286 Mass. 440, 442. The plaintiff does not contend in this action that her dismissal by the school committee was unlawful, but she contends that it was induced by the defendants through unlawful means. See G. L. (Ter. Ed.) c. 71, § 42, *Corrigan* v. *School Committee of New Bedford*, 250 Mass. 334, 339; and compare St. 1934, c. 123, *Graves* v. *School Committee of Wellesley*, 299 Mass. 80.

It appears to be uncontroverted that the defendants held the positions already referred to in the public school system of the city of Gloucester, and that the plaintiff was under the direct supervision of the defendant Harris. There was evidence — apparently testimony of the plaintiff — that in the spring of 1931 "she had a talk with the defendant Harris who said she would see to it that the plaintiff would live in some other place and not in Gloucester, which the defendant Harris denied," that "From then on there was trouble between the plaintiff and the defendant Harris relating to news items in the 'Flash' which was a page in

the Gloucester Times, published each Saturday regarding high school matters and doings," and that in the school year of 1932–1933, starting on September 6, 1932, the plaintiff's assignment of work included "supervising the publication of the 'Flash.'" The plaintiff testified that because of her work she did not have an opportunity to prepare entirely the material for the "Flash," and it was not published the first or second week, that "When the 'Flash' did not appear the second week, the defendant Harris came to the plaintiff in an angry mood and wanted to know the reason why the 'Flash' did not appear," that "The plaintiff tried to explain but the defendant Harris would not listen and rushed out of the room," that "The defendant Harris then reported to the defendant Johnson about the 'Flash' being not published and of her talk with the plaintiff," and that "The owner of the newspaper also mentioned to Mr. Johnson the omission of the 'Flash.'"

The plaintiff testified further as follows: "The defendant Johnson then called the plaintiff to his office and a discussion was had in regard to the reason for not publishing the 'Flash.' This conference took place on September 26, 1932, in the forenoon in the office of the defendant Johnson. The plaintiff tried to explain to the defendant Johnson the reason for not getting out the 'Flash' but the principal was angry and said that he would give her ten minutes time to make up her mind whether she would call a meeting of the 'Flash Board' for that afternoon and when she did not answer, he ordered her to call a meeting of the 'Flash Board' for 1:30 that afternoon." This order was in writing and was as follows: "September 26, 1932 . . . My dear Miss Caverno: Confirming our conference, I order a meeting of the Flash Board at 1.30 to-day with you in charge. Sincerely, Leslie O. Johnson." There was evidence that the defendant Johnson "also made the following statement to the plaintiff: 'I shall see whether Miss Harris and I, or you will remain longer in the Gloucester High School,'" that "The plaintiff then became ill and went home about 1 o'clock and told the assistant principal . . . that she was not able to attend the 'Flash Board' meeting because of

illness," that she "remained at home for a day or two and then returned to teach again," and "taught from then on until November 17, 1932," that "At the 'Flash Board' meeting the defendant Harris took over the management of the 'Flash' and the schedule of the plaintiff was re-arranged," and that "The defendant Johnson made a report of the matter to the superintendent, the defendant Fellows."

There was evidence that "the plaintiff went to the superintendent's office some time in the latter part of September or the beginning of October 1932, and talked with him about the situation," and there "was contradictory evidence as to what took place or what was said in his office, the plaintiff testifying that she had not refused to abide by the orders of the superintendent or Mr. Johnson or Miss Harris, while the superintendent testified that she said she would refuse to abide by their orders in regard to the 'Flash.'" The plaintiff testified as follows: "On May 3, 1933, she received a letter from the defendant Fellows requesting her resignation. . . . On July 8, 1933, the plaintiff answered this letter by a letter written to the defendant Fellows in which she stated that she expected to teach 'this coming fall.' . . . The defendant Fellows answered this letter on July 14, 1933, with a letter in which he stated that he is convinced that for the best interests of the Gloucester High School the plaintiff should not return as a teacher and that it was his intention to recommend to the school committee at the next regular meeting that they notify her that they will vote on her dismissal. . . . On September 5, 1933, the beginning of the school year, she went to the high school as was customary and usual in prior years and talked with the defendant Johnson and told him that she was ready to teach school and requested that he give her a program schedule of assignments as was customary. This the defendant Johnson refused to do saying that he was told by the superintendent not to allow the plaintiff to teach."

The bill of exceptions contains the following recital: "The school committee is composed of ten members, with the mayor as chairman. Each member of the school committee was called by the plaintiff as a witness and their

testimony generally was that from time to time at meetings of the school committee from September 1932 until the plaintiff's dismissal in October 1933, there were informal discussions with Mr. Fellows sitting in as secretary regarding the trouble with the defendant Johnson and the defendant Harris about the 'Flash' and as to her physical and nervous condition, and that he would recommend her dismissal from the school as a teacher. These statements were made by word of mouth and the minutes of the school committee did not contain any of these talks about the plaintiff. The members of the school committee who voted to dismiss the plaintiff testified that what the defendant Fellows said to them about the plaintiff and the troubles she had with the defendants Johnson and Harris and other information influenced them to vote for her dismissal, and that in addition thereto his recommendation to dismiss the plaintiff also influenced them to vote for her dismissal. All of them stated that they took the statements of the defendant Fellows in regard to the plaintiff as being true, and . . . the chairman testified that his mind and the minds of a majority of the other members of the school committee were made up before the hearing of September 25, 1933, to dismiss the plaintiff and were influenced in this determination by the things the defendant Fellows told them about the plaintiff." There was evidence that at the hearing before the school committee the defendant Fellows made a statement of the charges against the plaintiff, that the plaintiff "was asked if she had anything to say and she said her attorney would do so," that the attorney made a statement, and that "No witnesses were called by either side, and no affidavits were presented at the hearing."

1. A verdict against the defendant Harris was not warranted. There was no evidence tending to show any causal relation between her conduct and the dismissal of the plaintiff, apart, at least, from this defendant's report to the principal of the "Flash" incident. Making such a report — of the nature and in the circumstances shown by the plaintiff's uncontradicted testimony — was, as matter of common knowledge, within the scope of this defendant's duty and was

justified on that ground (see *Caverno* v. *Fellows*, 286 Mass. 440, 443; see also *Hartnett* v. *Plumbers' Supply Association of New England*, 169 Mass. 229, 236), even if it could be found that the dismissal of the plaintiff was a natural consequence of the report and for this reason intended by this defendant. Performance of this duty was not wrongful by reason of the possibility or probability that the loss of the plaintiff's position would result. See *Herbits* v. *Constitution Indemnity Co. of Philadelphia*, 279 Mass. 539, 541–542. And it does not appear that the report in itself was beyond the scope of this defendant's duty or improper in any other respect.

The plaintiff contends, however, that this defendant, in making the report, acted with "malice" toward the plaintiff — apparently meaning ill-will toward the plaintiff, or a purpose to harm her. The word "malice" in common speech has this meaning. But in an action for malicious interference with a contract or with employment an "intentional interference with such a right, without lawful justification, is malicious in law, even if it is from good motives and without express malice." *Berry* v. *Donovan*, 188 Mass. 353, 356. *McGurk* v. *Cronenwett*, 199 Mass. 457, 462. *Anderson* v. *Moskovitz*, 260 Mass. 523, 526. We need not consider at large the extent to which, if at all, a malevolent motive may render wrongful interference otherwise justified. It was said in *Moran* v. *Dunphy*, 177 Mass. 485, 487, an action for maliciously inducing an employer to discharge an employee, that "while intentional interference . . . may be privileged if for certain purposes, yet if due only to malevolence it must be answered for." See also *Walker* v. *Cronin*, 107 Mass. 555, 564. And malevolence or "express malice" has been referred to as material where such malevolence or malice, and not a justifiable purpose, was the reason for the interference. See *Lukas* v. *Tarpilauskas*, 266 Mass. 498, 499. See also *Multer* v. *Knibbs*, 193 Mass. 556, 558. In the evidence above recited there is little, if anything, tending to show malevolence toward the plaintiff on the part of this defendant. Compare *Lukas* v. *Tarpilauskas*, 266 Mass. 498, 499. But clearly such evidence does not show that malevolence, rather than a purpose to

perform her duty, was the defendant's sole or even domi-
nant reason for making the report. There was no such
proof of "express malice" on the part of this defendant as
would negative justification for making such report or, on
any ground, entitle the plaintiff to maintain the action.
See *Lukas* v. *Tarpilauskas*, 266 Mass. 498, 499.

2. A verdict against the defendant Johnson — the prin-
cipal — was not warranted. There is no evidence connect-
ing him with the dismissal of the plaintiff from her position
as teacher, apart from his report to the superintendent.
As in the case against the defendant Harris, this defend-
ant's duty justified him in making such a report — which
does not appear to have been improper in any particular —
and the evidence did not warrant a finding of malevolence
or "express malice" which would negative justification or
entitle the plaintiff, on any ground, to maintain the action.
The testimony of the plaintiff to his conduct at the time         .
of his conference with her, and the evidence of his state-
ment with respect to her remaining longer in the school
and of his other relations with her are not sufficient to
show an unlawful interference by him with her rights as a
teacher.

3. A verdict against the defendant Fellows — the super-
intendent — was not warranted. The general supervisory
nature of the duties of a superintendent of schools are mat-
ters of common knowledge. *Caverno* v. *Fellows*, 286 Mass.
440, 443. And there was a statutory provision for recom-
mendations by the superintendent before a teacher should
be dismissed. G. L. (Ter. Ed.) c. 71, § 42. *Sheldon* v.
*School Committee of Hopedale*, 276 Mass. 230, 235. Since
the school committee had executive functions to perform
(see *Graves* v. *School Committee of Wellesley*, 299 Mass.
80, 87; see also *Corrigan* v. *School Committee of New Bed-
ford*, 250 Mass. 334, 339), it was not unnatural or improper
for this defendant to discuss informally with the committee,
or its members, the adaptability of the plaintiff for the
work of a teacher and her conduct in that position, includ-
ing the incident of the "Flash." Even with respect to
her dismissal there was no requirement that the charges

against her be "substantiated" in a proceeding before the school committee in the nature of a judicial investigation, such as is now made by St. 1934, c. 123, substituting a new § 42 in G. L. (Ter. Ed.) c. 71 (see *Corrigan* v. *School Committee of New Bedford,* 250 Mass. 334; *Graves* v. *School Committee of Wellesley,* 299 Mass. 80, 86, 87), though we do not intimate that under the law as changed this defendant's conduct would have been improper. There is nothing in the evidence to indicate that, in informal discussion, statement to the committee at the hearing, or recommendation for the plaintiff's dismissal, this defendant acted outside the scope of his authority or improperly in any other particular. And it could not have been found from the evidence of the failure of this defendant to give the plaintiff a teaching assignment, his request for her resignation, his letter to her stating that he was "convinced that for the best interests" of the school she "should not return as a teacher" and that "it was his intention" to make a recommendation for her dismissal, or any other evidence in the case, that this defendant was actuated by ill-will or a purpose to harm the plaintiff, rather than by a purpose to perform his duty as superintendent in such a manner as to promote properly the interests of the school. The plaintiff has not sustained the burden of proving "express malice." See *Lukas* v. *Tarpilauskas,* 266 Mass. 498, 499. Justification is shown for any interference by this defendant, which could have been found on the evidence, with the plaintiff's position as teacher.

Whether on any other ground the direction of a verdict for the defendants could be supported need not be considered.

*Exceptions overruled.*