## WAYNE J. ALBA vs. CHRISTINE SAMPSON.

No. 96-P-259.

Middlesex. December 5, 1997. - February 24, 1998.

Present: BROWN, DREBEN, & KASS, JJ.

*Practice, Civil,* Summary judgment. *Libel and Slander. Contract,* Interference with contractual relations. *Malice. Employment,* Termination.

In a civil action, the plaintiff demonstrated no reasonable expectation of proving special damages, an essential element of his defamation claim based on the defendant's spoken words, nor did the plaintiff demonstrate that the alleged slander was actionable per se in the circumstances; the judge correctly allowed the defendant's motion for summary judgment. [312-314]

In a civil action, the plaintiff did not establish, in his claim for tortious interference with contractual relations, that the defendant acted with actual malice, that is, with a purpose unrelated to any legitimate corporate interest, in advising, when asked by the defendant's manager, that a new position be filled by someone other than the plaintiff. [314-317]

CIVIL ACTION commenced in the Superior Court Department on May 27, 1992.

The case was heard by *Herman J. Smith, Jr.,* J., on a motion for summary judgment.

*Paul A. Manoff* for the plaintiff.

*Ilene Robinson Sunshine* for the defendant.

BROWN, J. For approximately five years, the Interactive Data Corporation (IDC) employed the plaintiff, Wayne Alba, as an accountant. In January, 1992, IDC laid off Alba as part of a company-wide reduction in force. Following his lay-off, Alba sued IDC and Christine Sampson, an employee of superior rank who was not in his chain of command, claiming that Sampson defamed him and maliciously induced IDC to terminate his

employment. A judge of the Superior Court allowed the defendants' motion for summary judgment.[1] We affirm.

When a defendant demonstrates that the plaintiff has no reasonable expectation of proving an essential element of his case, summary judgment properly may be granted. See *Colley* v. *Benson, Young & Downs Ins. Agency, Inc.*, 42 Mass. App. Ct. 527, 529 (1997). In reviewing the allowance of a defendant's motion for summary judgment, we view the facts in the light most favorable to the plaintiff. *Id.* at 528. "A complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial." *Lyon* v. *Morphew*, 424 Mass. 828, 831 (1997), quoting from *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991).

1. *Defamation.* The plaintiff has waived all defamation claims against Sampson with the exception of his claim arising from the so-called "bumper sticker" incident. That incident involved a disgruntled former IDC employee posting bumper stickers all over the employee parking garage that stated "Chris Sampson is a fat loser." After seeing the stickers, Sampson confronted Alba in his office, hysterical, with tears in her eyes, and screamed, "You fucking asshole. What do you think you're doing? You're going to jail. I'm going to get you for that." After reviewing surveillance tapes which revealed that a former employee was responsible for the incident, Sampson apologized to the plaintiff. Additional facts pertaining to this incident will be discussed as the need arises.

Summary judgments are favored in defamation cases. See *Mulgrew* v. *Taunton*, 410 Mass. 631, 632 (1991). Generally, spoken words are not actionable per se without proof of special damages, which consist of economic, as distinguished from general, damages. See *Lynch* v. *Lyons*, 303 Mass. 116, 118-119 (1939). Here, the plaintiff has no reasonable expectation of proving special damages, an essential element of his case.

Conceding that he has failed to allege any facts tending to show special damages, the plaintiff claims that Sampson's slander was actionable per se without proof of special damages because it fell within the narrow exception for slander which "prejudice[d] him in his office, profession or business or may probably [have] tend[ed] to do so." *Lynch* v. *Lyons, supra* at

---

[1]The plaintiff has waived all claims against IDC. See *Edinburg* v. *Merry*, 11 Mass. App. Ct. 775, 779 (1981).

119. See *Morrill* v. *Crawford*, 278 Mass. 250, 256 (1932). We disagree.

The instant case is governed in material respects by *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass. 337 (1943). There, in a case that involved a manager who stated at a staff meeting that it was "a disgrace" to have the plaintiff in the office, the court held that the comments were not, as matter of law, slander per se "affecting the plaintiff in his trade or profession." *Id.* at 345-346. The court reasoned that disgrace was a word of general disparagement "equally discreditable as applied to all persons and not peculiarly harmful in a financial way to insurance agents." *Id.* at 346. The court also reasoned that the manager's words did not describe any conduct or characteristic incompatible with the plaintiff's successful performance of his job as an insurance agent. *Ibid.*

Similarly, here, Sampson's profanity-laced statements accusing the plaintiff of the before-hours office prank can only be construed as words of general disparagement directed at Alba as an individual as opposed to his professional accountant position. Sampson's words did not impute some lack of an essential qualification "demanded of a person in the lines of endeavor pursued by [the plaintiff]." See *Lynch* v. *Lyons*, 303 Mass. at 119. Nor did her words, spoken in the heat of an emotional moment, impute serious and wilful misconduct in office or in business within the meaning of our case law. Contrast *Warner* v. *Fuller*, 245 Mass. 520, 523-525 (1923) (conflict of interest in public office); *Morgan* v. *The Republican Publishing Co.*, 249 Mass. 388, 391 (1924) (criminal plot to frame police chief by alleged employee of detective agency). Sampson, having discovered the identity of the culprit by viewing surveillance tapes of the premises, apologized to the plaintiff within hours of her accusation. Thus, the incident was quickly resolved, the plaintiff was exonerated, and the fast-spreading office rumors about the plaintiff's alleged involvement were laid to rest.

The plaintiff has failed to set forth sufficient facts in the summary judgment record that would allow a jury to infer reasonably that Sampson's accusation prejudiced Alba in his office or probably tended to do so. At most, the facts set forth by the plaintiff tend to show that the plaintiff's coworkers, including his two immediate supervisors, discounted the "ridiculous" accusation immediately or soon after speaking with him. In addition, Kurt Hausafus, IDC's chief financial officer (CFO), who

was responsible for evaluating the plaintiff's annual salary reviews written by his immediate supervisors, never even heard about the incident.

There were no facts in the record which would tend to show that any coworkers stopped speaking with the plaintiff or refused to work with him after the incident. No disciplinary action was taken against the plaintiff. There was no testimony tending to show that any coworker's opinion of the plaintiff was lowered. In sum, the plaintiff has failed to support his allegations that "most" people at IDC, not one of whom he could name, thought the incident was "mean" and a "strike against him." These allegations were insufficient to stave off the defendants' well-pleaded motion for summary judgment. See *Humphrey* v. *National Semiconductor Corp.*, 18 Mass. App. Ct. 132, 136 (1984).

2. *Tortious interference with contractual relations.* As part of a three-year corporate restructuring plan, Hausafus, IDC's CFO, decided to combine the plaintiff's position with that of his supervisor, William Molloy, and had initially slated the plaintiff for the new position. He also decided to move the new position under Sampson's control. In January, 1992, Hausafus consulted with Sampson on who should fill the restructured position. Sampson resisted the prospect of the plaintiff filling the position, preferring instead that Hausafus hire someone from outside the company. The plaintiff, Molloy, and numerous other IDC employees were laid off. The restructured position was ultimately filled by a former employee of IDC.

There are four elements required to establish the tort of intentional interference with contractual relations: (1) the plaintiff had a contract with a third party, (2) the defendant knowingly induced the third party to break that contact, (3) the defendant's interference was improper in motive or means, and (4) the plaintiff was harmed by the interference. See *Melo-Tone Vending, Inc.* v. *Sherry, Inc.*, 39 Mass. App. Ct. 315, 318-319 (1995). In the employment and discharge context, the law of this jurisdiction seeks to protect a corporate official's freedom of action by requiring proof that the official acted with actual malice. See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 663-664 (1981), *S.C.*, 391 Mass. 333 (1984). Although summary judgment is often an improper medium to resolve state of mind issues, it is appropriate in tortious interference claims if the record contains insufficient facts tending to show actual malice.

See *Shea* v. *Emmanuel College*, 425 Mass. 761, 764 (1997); *Sereni* v. *Star Sportswear Mfg. Corp.*, 24 Mass. App. Ct. 428, 432-433 (1987); *Mullen* v. *Ludlow Hosp. Soc.*, 32 Mass. App. Ct. 968, 971 (1992).

Here, the plaintiff concedes that Sampson, the revenue manager, had a conditional privilege to give advice to Hausafus about his draft reorganization plan and her staffing needs as part of the planned reduction in force. He asserts, however, that Sampson, acting for reasons unrelated to the corporate interest, lost her privilege by inducing Hausafus to delete him from the initial list of employees to be retained in the finance division.

To be reasonable, an inference of malice must be based upon probabilities rather than mere possibilities. See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. at 664. An employee must demonstrate that spite or malevolence, i.e., a purpose unrelated to any legitimate corporate interest, was the controlling factor in urging the plaintiff's discharge. *Ibid. Boothby* v. *Texon, Inc.*, 414 Mass. 468, 487 (1993). See Moriearty, Adkins, & Lipsitz, Employment Law § 6.46 (1995). The burden was on the plaintiff to establish that Sampson abused her privilege. See *Judd* v. *McCormack*, 27 Mass. App. Ct. 167, 173 (1989).

Although the question is a close one, we conclude that the facts are insufficient to prove that Sampson acted with actual malice in making her recommendations to Hausafus.

The plaintiff submits a laundry list of facts in the summary judgment record from which a jury allegedly could draw the requisite inference of malice. Even assuming that the plaintiff raised all of these arguments below, these facts are insufficient to meet his burden.[2] Many of the facts, including derogatory comments by Sampson about the plaintiff's clothes and background and her general uncivil behavior toward the plaintiff, tended to show simply that Sampson disliked the plaintiff. An inference that a defendant did not like the plaintiff, however, would not warrant the further inference that the

---

[2]From what we can discern from the Superior Court judge's memorandum of decision, it appears that the plaintiff relied upon just *two* facts below: Sampson's "confession" to William Molloy, after the plaintiff was terminated, that she could not work with the plaintiff, and Sampson's hiring of an allegedly less qualified replacement. See *Harrison* v. *Boston Financial Data Servs., Inc.*, 37 Mass. App. Ct. 133, 133 n.1 (1994). In any event, we are unable to determine from the appropriate materials on file in the summary judgment record whether the plaintiff properly raised all of these issues in the Superior Court. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

defendant probably acted with ill will in securing the plaintiff's discharge. *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. at 664. *King* v. *Driscoll*, 418 Mass. 576, 587 (1994), *S.C.*, 424 Mass. 1 (1996).

The plaintiff's argument that Sampson replaced him with a less qualified individual is conceptually flawed. The plaintiff's labelling aside, this was not a simple "replacement" situation. It is undisputed that the plaintiff's accounting job was eliminated and the newly-created position for which he was considered and ultimately rejected combined job functions from three different positions. The plaintiff's conclusory assertion that he was more qualified than his replacement, moreover, appears to be unsupported by the record. His replacement, Ronald Pelletier, had more accounting experience and, even more important, supervisory experience — which the new position called for and the plaintiff lacked. Finally, Sampson did not make the decision to lay the plaintiff off; Hausafus did. (It is undisputed that Hausafus did not cede the decision-making to Sampson.)

In any event, this argument is of no avail. Even assuming that it could be found that Sampson replaced the plaintiff with someone less qualified, that hiring decision would not allow the drawing of an inference of malice. See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. at 665; *Mathias* v. *Beatrice Foods Co.*, 23 Mass. App. Ct. 915, 917 (1986) (simple negligence, want of sound judgment, hasty action, or sloppy and unfair business practices will not cause the loss of a privilege).

Finally, with respect to Sampson's post hoc "confession" to William Molloy that the real reason she recommended someone other than the plaintiff for the new position was her "inability to work with the plaintiff," this testimony, even if believed, does not tend to show that she acted for a reason unrelated to *any* corporate interest. To the contrary, the ability of coworkers to get along and work together is vital to the efficient functioning of any company, and thus, this motivation was arguably within the corporate interest. Contrast *O'Brien* v. *New England Tel. & Tel. Co.*, 422 Mass. 686, 688-690 (1996) (supervisor intentionally denied the plaintiff assignments despite work being available).

The decisive factor in this case for us is the context in which Sampson's recommendations were made. It is undisputed that despite her dislike of the plaintiff, Sampson never approached the plaintiff's supervisors, seeking to have him terminated.

Hausafus, unsolicited, came to her to discuss the company reduction in force. Hausafus, and not Sampson, ultimately made the decision to cut the plaintiff out of that plan. On these facts, the plaintiff will be unable to show that Sampson, more probably than not, maliciously induced the plaintiff's termination.

The main cases relied upon by the plaintiff at oral argument involved much stronger evidence of actual malice. Of critical importance, the defendants in those cases were supervisors in the direct chain of command. These cases, therefore, are distinguishable on their facts. See *O'Brien* v. *New England Tel. & Tel. Co.*, 422 Mass. at 688-690 (supervisor's acts in screaming repeatedly at the plaintiff daily, harassing her, denying her work to do when work was available, and failing to follow the mandatory directives stemming from the plaintiff's grievances could be found to exceed the protected conduct); *Clement* v. *Rev-Lyn Contr. Co.*, 40 Mass. App. Ct. 322, 325 (1996) (evidence that supervisor threatened to use physical violence against the plaintiff if he showed up at work and unjustified slander on the day after the termination presented jury question on malice issue). We are of opinion that the instant case falls closer to *Caverno* v. *Fellows*, 300 Mass. 331 (1938), and *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659 (1981), than to those on which the plaintiff places principal reliance.

We have considered the plaintiff's other arguments concerning the malice issue and, based on the discussion and cases cited in the margin, reject them.[3]

*Judgment affirmed.*

---

[3]An inference of the probability of malice does not flow from Sampson's angry accusation and quick apology with respect to the "bumper sticker" incident made at least a year before her recommendations to Hausafus. Compare *Caverno* v. *Fellows*, 300 Mass. at 333-334. Sampson's earlier, internal report to the human resources department about the plaintiff's work ethic and unprofessional behavior was privileged and does not tend to prove that Sampson acted with actual malice. Compare *Mullen* v. *Ludlow Hosp. Soc.*, 32 Mass. App. Ct. at 971. Nor did Sampson's failure to investigate the plaintiff's credentials and experience before discussing with Hausafus the plaintiff's suitability for the newly-created position bespeak malice. See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. at 665. Finally, the fact that the plaintiff would possibly or probably lose his job as a result of Sampson's recommendations made in the course of her job duties was insufficient to show actual malice. See *Caverno* v. *Fellows*, 300 Mass. at 337.