Sosman, J.
Plaintiff Claudia Schütz has brought the present action complaining of the termination of her employment with defendant Go Ahead Vacations, Inc. She alleges employment discrimination, wrongful termination in violation of public policy, and intentional interference with advantageous relations. Her husband, David Schütz, has also brought a claim for loss of consortium. Defendants have moved for summary judgment on various grounds as to all Counts of plaintiffs’ complaint. For the reasons set forth below, defendants’ motion is allowed in part and denied in part.
I. Timeliness of MCAD filing
Defendants have moved for summary judgment on plaintiffs claims of employment discrimination, contending that her filing with the MCAD was made more than six months after she became aware of alleged discriminatory animus at Go Ahead Vacations, Inc. However, no adverse employment action was taken against plaintiff until she was fired on January 12, 1996. Although she complains of certain remarks and attitudes at the company prior to that date, she does not contend that the environment was so intolerable as to amount to constructive discharge. Her MCAD charge, filed on July 11, 1996, was filed within six months of the date she was terminated. The charge was timely filed.
n. Prima facie case
Defendants also contend that plaintiff can not make out a prima facie case of employment discrimination and that she can not meet her burden of showing that the employer’s articulated reason for her termination is a pretext. There are disputed issues of fact as to whether plaintiffs job performance was or was not adequate. Defendant points to disappointing sales results and contends that plaintiff was responsible for them. Plaintiff contends that defendant Solvell had put a “hold” on marketing materials in the fall of 1995 and that any failure to meet sales projections was attributable to that decision, not to any inadequacies on her part. Defendants also contend that plaintiffs position, Director of Sales, was eliminated (along with the position of Vice President for Sales and Marketing) as part of a company-wide reorganization following her termination. Plaintiff contends that the change in titles (the creation of a “Vice President for Sales” and a “Vice President for Marketing”) did not actually eliminate her position. These factual disputes, and disputes as to what inferences should or should not be drawn from those facts that are themselves undis *574 puted, can not be resolved by way of summary judgment.
Defendants also contend that plaintiff will be unable to show that the company’s articulated nondiscriminatory reason for her termination was a “pretext.” However, plaintiff claims that various statements were made to her (and others) evincing an explicit policy to hire and retain only younger workers. She also alleges that the company’s president made inappropriate sexual remarks and engaged in conduct that made female workers uncomfortable. The credibility of plaintiffs allegations, and the extent to which they would convince the fact-finder that the stated performance reasons for discharge were a “pretext,” can not be resolved on summary judgment.
HI. Individual liability for violations of G.L.c. 15 IB
Plaintiffs claims of employment discrimination have been made against Go Ahead Vacations, Inc. (her employer), Stefan Solvell (the president of Go Ahead Vacations, Inc.), EF, Inc. (the overseas parent company), and Bertil Hult (the CEO of EF, Inc.). Defendants Solved and Hult contend that they can not be individually dable under G.L.c. 15IB.
G.L.c. 151B, §4(1) and (1B) prohibit “an employer” from engaging in various forms of discrimination. Those provisions defining what practices are unlawful are directed at the employer itself, not at the individual officers, directors, agents, employees, etc. However, G.L.c. 151B, §4(5) also makes it unlawful for “any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter.” Other Justices of this court have held persons who engaged in adeged discriminatory acts or who were otherwise responsible for the allegedly unlawful adverse employment decision individually dable under §4(5). See Hennessy v. Perico, Inc., 10 Mass. L. Rptr. 279 (1999); Winsman v. Choate Health Management, Inc., 8 Mass. L. Rptr. 480 (1998); Ladd v. Everett Savings Bank, 8 Mass. L. Rptr. 17 (1998), DuPuis v. ConTest, Inc., 4 Mass. L. Rptr. 163 (1995). See also Chapin v. University of Massachusetts at Lowell, 977 F.Sup. 72, 78-80 (D.Mass. 1997) (individual supervisor liable under §4(5) for failure to investigate complaints of sexual harassment, as that failure aids and abets sex discrimination).
Plaintiff alleges that, wed prior to her own dismissal, the former president of Go Ahead Vacations, Inc. instructed her to fire an employee who was “too old,” with the explanation that Berth Hult had “a philosophy that his companies should appear young and vital and that older workers didn’t fit with that image.” She contends that it was Hult’s “hiring directive” that she not hire anyone over the age of 30. To the extent that defendant Hult, as CEO of the parent corporation, dictated the subsidiary corporations’ policy of discriminating against older workers, that conduct would come within the statutory prohibition against ”incit[ing], compel[ling] or coerc(ing)” unlawful employment discrimination. As against Solved, the president of Go Ahead Vacations who actuady fired plaintiff, plaintiff alleges that he engaged in inappropriate behavior around female employees, excluded women from key meetings, and told others that plaintiff was “too old” for her job. Such conduct, if proved, would also come within the prohibition set forth in §4(5). As such, the individual defendants may be held personally dable for their adeged conduct in aiding, abetting, inciting, compelling or coercing unlawful employment discrimination on the part of Go Ahead Vacations, Inc.
IV. Wrongful termination in violation of pubdc podcy
Plaintiff contends that Solved terminated her because she confronted him with adegations of unlawful practices at the company. Specifically, she adeges that she dedvered a memo to Solved on January 11, 1996, in which she warned that the company’s classification of certain workers as “salaried” employees instead of “non exempt” employees (a classification by which the company avoided paying any overtime compensation) was contrary to information that she had obtained “from the Massachusetts Wage and Hour compensation division.” Solvell fired plaintiff the day after she dedvered this memo.[1]
Violation of the overtime pay laws (G.L.c. 151, §§1A and 1B) is a criminal offense. Sec. G.L.c. 149, §27C. As such, plaintiffs memo to Solved accused the company of ongoing criminal violations. Termination in retaliation for bringing criminal conduct to a supervisor’s attention is a termination in violation of pubdc policy. Shea v. Emmanuel College, 425 Mass. 761, 762-63 (1997); Smith v. Mitre Corp., 949 F.Sup. 943, 950 (D.Mass. 1997). Indeed, the reference in plaintiffs memo to having obtained information from “the Massachusetts Wage and Hour compensation division” suggests that Solved may wed have thought that plaintiff had already made some report to regulatory authorities. If understood as a purely internal report adeging unlawful conduct, Shea makes clear that retadatory firing for complaints of criminal wrongdoing is actionable, even if those complaints are only made internady.
However, the court wid not recognize any cause of action for termination in violation of pubdc podcy when the legislature has already provided other remedies for the enforcement of that pubdc podcy. King v. Driscoll, 418 Mass. 576, 584 n.7 (1994); Mello v. Stop & Shop Companies, c., 402 Mass. 555, 557 (1988); Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 512 (1985). The legislature has already created a damages remedy (up to two months’ wages plus costs and attorneys fees) in the event that an employer “discharges or in any other manner discriminates against an employee . . . because such employee has com *575 plained of a violation of the provisions of this chapter, or because such employer believes that said employee or individual may complain of a violation of the provisions of this chapter.” G.L.c. 151, §19(1). Nothing in §19(1) limits this remedy to the specific employee who was not paid properly. Rather, it extends the remedy to any employee who is discharged because she “has complained of a violation” or “may complain of a violation.”[2] Thus, plaintiffs claim that she was fired because of her complaint that the company was violating G.L.c. 151, §§1A and IB gives her a claim under G.L.c. 151, §9(1), not a common law claim for termination in violation of public policy. Defendants’ motion for summary judgment as to that common law claim will be allowed.[3]
V. Intentional interference with advantageous relations
Plaintiff alleges that Solvell and Hult intentionally interfered with her advantageous relationship with Go Ahead Vacations, Inc. As to defendant Hult, plaintiff simply has no evidence that Hult played any role in the actual decision to terminate her. There is no evidence that Hult ordered or recommended that plaintiff be fired. Indeed, plaintiff has no evidence that Hult even discussed the subject with Solvell.[4] To the extent that she has evidence that Hult was the source of the alleged general policy of discriminating against older workers, her exclusive remedy is to be found G.L.c. 151B. Common law claims that are “merely recast versions” of her employment discrimination claims are barred. Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996). Hult’s alleged involvement in setting discriminatory policies, which would give rise to liability under G.L.c. 151B, §4(5), would not render him liable for a common law claim of intentional interference with advantageous relations.
As to defendant Solvell, the president and CEO of Go Ahead Vacations, Inc. who made the decision to fire plaintiff, plaintiffs claim of intentional interference is deficient for at least two separate reasons. A defendant cannot be liable for intentional interference with his own contracts.
As both the highest ranking corporate official and as the sole decision-maker who fired plaintiff, Solvell should be viewed as indistinguishable from the corporation itself for purposes of any claim of intentional interference. See Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 50, review denied, 409 Mass. 1104 (1991). Solvell is not someone who maliciously set out to influence some other decision-maker to fire plaintiff. He was the decision-maker acting on behalf of the corporation. Converting every corporation’s breach or termination of contract into a claim of intentional interference on the part of the individual that actually made the decision to breach or terminate the contract would create widespread individual liability for what are corporate acts.
Moreover, as to someone within the same company who allegedly interferes with another employee’s contract, there is a qualified privilege against liability. That privilege can be overcome by showing that the defendant acted with actual malice —i.e., that “a purpose unrelated to any legitimate corporate interest” was the controlling factor in defendant’s actions. Alba v. Sampson, 44 Mass.App.Ct. 311, 315, review denied, 427 Mass. 1104 (1998). The burden is on plaintiff to come forward with evidence of malice sufficient to overcome defendant’s qualified privilege. Id.
Here, plaintiff has no evidence to suggest malice on Solvell’s part. To the extent that plaintiff seeks to show malice by pointing to Solvell’s alleged discriminatory motive in firing her, her exclusive remedy for age or sex discrimination in employment is under G.L.c. 151B. A claim that a supervisor interfered with an employee’s contract where the only form of malice shown is that he was motivated to do so because of plaintiffs protected status under G.L.c. 151B is merely a “recast version” of her employment discrimination claim. Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996).
VI. Loss of consortium
Plaintiff David Schütz, the husband of Claudia Schütz, acknowledges that a claim for employment discrimination under G.L.c. 151B does not give rise to a claim for loss of consortium. Where his wife has no viable tort claim for personal injuries, but only statutory claims under G.L.c. 151B and G.L.c. 151, §9(1), plaintiff David Schütz has no viable claim for loss of consortium.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is ALLOWED as to Count n, Count III and Count IV and DENIED as to Count I, and plaintiff Claudia Schutz is given leave to amend her complaint within 30 days to add a claim for retaliation under G.L.c. 151, §9(1).

 Solvell claims that he did not see this memo until Januaiy 16, four days after plaintiff was terminated. For purposes of the present motion, the court must accept as true plaintiffs version as to when the memo was delivered.

 It would also not comport with the legislature’s intent to allow the present plaintiff the full amount of her lost income following discharge by way of a claim for termination in violation of public policy when the actual underpaid victims would, if discharged in retaliation for pursuing their rights, be limited to two months’ pay as damages.

 Where plaintiff has, from the outset, complained that her termination was in retaliation for protesting violations of state overtime compensation laws, there would be no prejudice to defendant in allowing plaintiff to amend her complaint to specify that that claim is being brought under G.L.c. 151, §19(1) rather than as a common law claim. Accordingly, plaintiff is given 30 days in which to file an amended complaint adding a claim for damages under G.L.c. 151, §19(1).

 Plaintiff has moved to reopen discovery so she may seek to obtain such evidence. The deadline for completion of all discovery is long past. Moreover, due to discovery disputes in *576 the early stages of this case, this court (Zobel, J.) issued specific discovery orders, including the appointment of a discovery master. Plaintiff did not comply with the provisions concerning the discovery master, never pursued her discovery problems with the duly appointed discovery master, and allowed the discovery deadline to lapse. She thereafter sought to have Judge Zobel’s discovery orders vacated, but the motion was denied. Having failed to comply with the court's prior discovery orders, and having failed to pursue her discovery disputes before the duly appointed discovery master within the time allowed by those discovery orders, plaintiffs recent slew of discovery motions are all denied.