Walker, J.
This is a civil action filed by the plaintiff, Harry Hope (“Hope”), seeking to recover damages for injuries he allegedly suffered when he became separated from his employment with the defendant, Double E Corporation, Inc. (“Double E”). Hope alleges that the acts and practices of Double E and its President, the defendant Mark Fortin (“Fortin”) (together “the defendants”), interfered with the advantageous contractual-relationship between himself and Double E; breached the existing employment contract between himself and Double E; intentionally inflicted emotional distress upon him; and constituted unfair and deceptive actions in violation of G.L.c. 93A. The defendants deny the existence of any employment contract between Hope and Double E. They contend that because Hope terminated his employment at-will status at Double E by tendering his resignation to Fortin, the law precludes him from seeking damages for his claims. The defendants moved for summary judgment and Hope filed papers in opposition to the motion. Upon consideration of the complaint, of all motion papers submitted by the parties, and of oral arguments, the court ALLOWS the defendants’ motion for summary judgment on Count III (Interference with Contractual Relations) and Count IV (Violation of G.L.c. 93A). The court DENIES the defendants’ motion for summary judgment on Count I (Breach of Contract) and Count II (Intentional Infliction of Emotional Distress).

BACKGROUND

Hope commenced his employment at Double E on March 4, 1987. On the same day Hope and a representative of Double E signed a four-page document entitled “Invention and Confidentiality Agreement” (“the 1987 agreement”). The 1987 agreement required that Hope exercise due and diligent precautions to protect all confidential information relating to his employment and provided that Hope disclose all “inventions” he developed with Double E during the period of his employment and for one year after. Additionally, the 1987 agreement provided that Hope was an employee at-will and specified that either he or Double E could terminate his employment at any time without cause upon written notice.[1] Any modifications to the subject matter of the 1987 agreement, either by Hope or an agent of Double E, would not be effective unless done by written amendment signed by an officer of Double E and Hope.[2] The 1987 agreement did not specify the amount of compensation Hope would receive for his services, the duties and responsibilities he would assume on behalf of Double E, or what benefits would be available to him as an employee. Hope continued his employment at Double E from March 4, 1987 until June 17, 1998. Throughout his eleven years of employment, Hope alleges that he and Double E entered into a series of supplemental oral agreements dealing with job titles, compensation and benefits. He asserts that none of the oral agreements altered, waived or revoked any portion of the 1987 agreement.
In September 1997 Hope alleged that he had been placed in the position of Senior Technical Advisor, a position which Double E announced and confirmed by a company notice. The company notice issued by Double E announced that it had accepted Hope’s resignation as Vice President of Engineering and articulated Hope's expectation to remain with Double E in a technical advisory role for an indefinite period of time.[3] Hope claims that on June 19, 1998, Fortin, without notice,[4] terminated him from his employment as a technical advisor with Double E due to the financial condition of the company.[5] Hope alleges that his termination became effective immediately; that Fortin denied him the opportunity to return to his desk and gather his personal belongings; and that Double E ceased paying his salary on or about June 19, 1998.
Hope thereafter applied for unemployment benefits offered by the Department of Employment and Training (“DET"). He maintains that in June of 1998, the defendants filed written notices and that Fortin provided testimony at a DET hearing stating that Hope had voluntarily resigned from Double E. Hope claims that the defendants’ motive in filing written notices and testifying at the DET hearing was to intentionally interfere with his collection of unemployment benefits.
On July 10, 1998, Double E received a subpoena from the attorney of Hope’s wife, Lisa Hunscher (“Hunscher”), requesting the production of Hope’s employment records pursuant to a pending divorce. Hunscher states that Double E provided the records and that, after reading the documents contained within them, she believed that Hope had resigned from his employment at Double E. Because she relied on Hope for financial support and realized that it would be impossible for him to support her and their three children if he received only unemployment benefits, Hunscher states that the issue of Hope’s alleged resignation became an issue in their divorce.

DISCUSSION

A. Standard for Summary Judgment Motion.
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, 424 Mass. 226, 232 (1997). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and the fact that it is entitled to a judgment in its favor. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). A moving party which does not bear *651 the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving party’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The opposing party cannot rest on the pleadings or on mere assertions of disputed facts to defeat the summary judgment motion. “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact ...” Pederson, 404 Mass. at 17. When reviewing a summary judgment record, the court credits facts in the light most favorable to the nonmoving party. Bisson v. Eck, 430 Mass. 406, 407 (1990); Gray v. Giroux, 49 Mass.App.Ct. 436, 437 (2000).
B. Breach of Contract.
Hope alleges that the defendants breached the 1987 agreement by terminating him without notice. Specifically, he contends that his eleven consecutive years of employment and a Double E company notice dated September 24, 1997 reflect the parties’ expectation that his employment would continue indefinitely. The defendants, however, contend that the 1987 agreement did not represent a written employment agreement and that it, along with the employee handbook, “emphatically” confirm Hope’s employee at-will status. They assert that any oral representations allegedly made.by Fortin cannot, as a matter of law, create a contract for Hope’s lifetime employment and that any actions attributed to them constituted the mere acceptance of Hope’s resignation.
While the court agrees with the defendants’ contention that particularly explicit expressions of intent are required to bind an employer to an employment contract of extraordinary duration, O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 907 (1993), it need not determine whether the oral representations allegedly made by Fortin satisfy this requirement. Both the 1987 agreement and the employee handbook provide for Hope’s employment at-will, and both documents specifically express Double E’s intention not to be bound by oral representations to the contrary. See supra note 2. Additionally, Hope’s deposition testimony indicates his belief that he was an employee at-will and his Complaint concedes that his series of alleged oral agreements with Double E concerned subject matter outside that of the 1987 agreement. The court finds nothing in the summary judgment record that puts the fullness of the 1987 agreement or employee handbook into question. Neither his eleven consecutive years of employment nor the alleged oral representations made by Fortin could, as a matter of law, modify Hope’s employee at-will status. Gregory v. Raytheon Service Co., 27 Mass.App.Ct. 1170, 1171 (1989); Welsh v. Quabbin Timber, Inc., 943 F.Supp. 98, 112 (D.Mass 1996); Whelan v. Intergraph Corp., 889 F.Sup. 708, 712 (D.Mass. 1995). Rather, Hope’s breach of contract claim hinges upon the factual determination of whether he resigned from his employment or whether Double E terminated him.
The defendants contend that, irrespective of whether Hope resigned or Double E terminated his employment, the documents that Double E provided him upon termination satisfy the written notice requirement of the 1987 agreement. They assert that this notice, when coupled with Hope’s status as an employee at-will, strictly complies with all aspects of the 1987 agreement. The court finds that the evidence presented by the parties raises disputed issues of fact concerning the circumstances surrounding the termination of Hope’s employment. Because an employer may waive an employee’s failure to comply with a written notice requirement by accepting an oral resignation and acting upon it, Abramowitz v. Director of Employment Sec., 390 Mass. 168, 174 (1983), the court must determine the sufficiency of the notice provided to Hope before assessing the materiality of the disputed facts.
“The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation. The object of the court is to construe the contract as a whole, in a reasonable and practical way consistent with its language, background and purpose.” Gross v. Prudential Ins. Co. of America, Inc., 48 Mass.App.Ct. 115, 119 (1999) (quoting USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989)). Hope alleges that, throughout his eleven years of employment, he and Double E entered into a series of informal oral agreements defining his various job titles, compensation and benefits. Evidence submitted by Hope indicates that throughout that time he received yearly increases in pay, at least two changes in job title and numerous changes in benefits. Viewing the evidence in the light most favorable to Hope, the court finds that the purpose of the written notice requirement contained within the 1987 agreement was to memorialize the moving party’s intent to terminate the employment relationship and specify the terms of severance. To the extent that the various documents Double E provided to Hope failed to articulate its intent to terminate the employment relationship and failed to specify the terms of the severance, the court finds that the documents do not satisfy the written notice requirement. Therefore, Hope’s claim for breach of contract hinges upon the factual determination of whether he resigned or whether he was terminated by Double E. Accordingly, the motion for summary judgment on on Count I (breach of Contract), on behalf of both defendants, is DENIED.
*652 C. Intentional Infliction of Emotional Distress.
Hope contends that by immediately terminating his employment and then filing false testimony with the DET, the defendants intentionally caused him emotional distress. Additionally, he alleges that the defendants maliciously intervened in a pending divorce with his wife (Hunscher) by attempting to convince her that he resigned from his employment at Double E in an attempt to avoid child support obligations.[6] The defendants assert that they contested Hope’s eligibility for unemployment benefits on a good faith belief that he had resigned from his employment and that Hope’s claims for emotional distress are barred under the Workers’ Compensation Act. Additionally, the defendants assert that Hope’s claims for emotional distress should fail because the alleged actions are insufficient to support a claim of intentional infliction of emotional' distress.
1. Exclusivity of the Workers’ Compensation Act
“The purpose of the Workers’ Compensation Act is to ensure that employees who give up their common law rights to sue their employers will not be without recourse, but will have a mechanism to be reimbursed for their employment-related injuries ‘regardless of fault or foreseeability.’ ” Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 216 (1998) (quoting Neff v. Commissioner of Dept. of Indus. Accidentss., 421 Mass. 70, 75 (1995)).[7] “The workers’ compensation act provides to employees who are injured on the job the exclusive remedy against their employers, who by paying workers’ compensation insurance premiums, are protected from civil lawsuits.” Brown, 45 Mass.App.Ct. at 216. It also provides the exclusive remedy against co-employees who commit intentional torts in the course of the employment relationship or in furtherance of their employer’s interest, provided the employee did not reserve the right of action pursuant to G.L.c. 152, §24. Green u. Wyman-Gordon Co., 422 Mass. 551, 558-59 (1996); O’Connell v. Chasdi, 400 Mass. 686, 690-91 (1987); Fusaro v. Blakey, 40 Mass.App.Ct. 1120, 123 (1996); see also, supra note 5. Co-employees themselves, however, are not immunized from suit by the Workers’ Compensation Act for intentional torts which are in no way within the scope of their employment or in furtherance their employer’s interest. O’Connell, 400 Mass. at 690-91.
“In determining whether the Workers’ Compensation Act bars common law claims, we look at the nature of the claims, not the source of the injuries. The injury need not arise out of the nature of the employment. An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects.” Doe v. Purity Supreme, Inc., 422 Mass. 563, 566 (1996) (citations omitted). Here, Hope alleges that Fortin and Double E knowingly provided false testimony and affidavits to the DET and that Fortin maliciously produced an inaccurate picture of his work history to Hunscher’s attorney. He asserts that, in doing so, Fortin and Double E were acting in bad faith by intentionally attempting to interfere with his collection of unemployment benefits and intentionally seeking to convince Hunscher that he was attempting to avoid his child support obligations. In so far as the defendants provided evidence in the form of affidavits and testimony to the DET, the court finds that Fortin was clearly acting within the scope of his employment and that any claim for emotional distress Hope allegedly suffered as a result of Double E’s conduct is barred by the Workers’ Compensation Act. However, it is not entirely clear that Fortin's alleged conduct in preparation and production of documents explaining the termination of Hope’s employment were' in whole or in part job related or furthered Double E’s interest. At this stage of the proceedings, it is premature to say that Hope will be unable to prove that Fortin was acting outside the scope of his employment or beyond the interest of Double E. Accordingly, the defendant’s, Double E’s, motion for summary judgment is ALLOWED. The defendant’s, Fortin’s, motion for summary judgment is DENIED.
2. Sufficiency of Allegations.
In order to state a cognizable claim for intentional infliction of emotional distress, Hope must allege that (1) Fortin “intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct”; (2) that Fortin’s “conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community”; (3) that Fortin’s actions were the cause of [Hope’s] emotional distress; and (4) that the emotional distress sustained [by Hope] was severe and “of a nature that no reasonable man could be expected to endure.” Agis v. Howard Johnson. Co., 371 Mass. 140, 144-45 (1976) (citations omitted). “[Liability cannot be predicated on ‘mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,’ nor even is it enough ‘that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress,’...” Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987). Rather, liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable. Id.
Hope claims that Fortin’s intentional intervention during the pendency of his divorce resulted in accusations that he attempted to avoid child support obligations. He alleges that these accusations questioned his financial commitment toward his wife and children and caused him emotional distress. “There is an issue for the jury if reasonable people could differ on *653 whether the conduct is 'extreme and outrageous.’ ” Agis, supra, at 145-46. The facts and circumstances Hope alleges could reasonably lead a trier of fact to conclude that Fortin’s conduct was extreme and outrageous, causing a severe strain on his family relations and having a traumatic effect on his emotional tranquility and health. Thus, Fortin’s motion for summary judgment on Count II (Intentional Infliction of Emotional Distress) is DENIED.
D. Interference With Contractual Relations.
Hope contends that the defendants interfered with his contractual relationship with Double E by terminating him from his employment. Specifically, he alleges that the defendants terminated his employment due to Fortin’s accusations of slander and insubordination. The defendants contend that Hope’s claim against Double E fails because a company cannot tortiously interfere with its own contract. Further, the defendants contend that the facts alleged fail to establish that Fortin acted maliciously in terminating Hope.
The court agrees with the defendants’ contention that there is no basis for Hope’s claim that Double E interfered with their contractual relationship. “A claim of interference with an advantageous business relationship involves one who, without privilege to do so, intentionally induces or causes a thirdperson not to enter into or continue a business relationship with another.” Riseman v. Orion Research Inc., 394 Mass. 311, 314 (1985). Double E cannot be liable for any claimed interference with the contractual relationship between itself and its employee, Hope. Appley v. Locke, 396 Mass. 540, 543 (1986); Riseman, 394 Mass. at 314. Therefore, the defendant’s, Double E’s, motion on Count III (Interference with Contractual Relations) is ALLOWED.
In order to be entitled to damages from Fortin, Hope must show that Fortin intentionally and without legal justification caused the termination of his employment with Double E. Appley, 396 Mass. at 543. In doing so, Hope must prove that: (1) he had a contract with Double E; (2) Fortin knowingly induced Double E to breach the contract; (3) Fortin’s interference, in addition to being intentional, was improper in motive or means; and (4) he was harmed by Fortin’s actions. Shea v. Emmanuel College, 425 Mass. 761, 764 (1997); G.S Enterprises, Inc., v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991); Alba v. Sampson, 44 Mass.App.Ct. 311, 314-15 (1998). “In the employment and discharge context, the law of this jurisdiction seeks to protect a corporate official’s freedom of action by requiring proof that the official acted with actual malice.” Alba, 44 Mass.App.Ct. at 314. In proving malice, Hope must prove that a purpose unrelated to any corporate interest was the controlling factor Fortin’s urging his discharge. Id. (citations omitted).
Although Hope alleges that Fortin urged his termination only after he allegedly “challenged his authority" and “slandered the company,” the court concludes that these facts are insufficient to prove that Fortin acted with actual malice. Even assuming that Hope could prove that Fortin urged his termination based upon conflict and “slander,” an inference that Fortin did not like him would not warrant the inference that Fortin acted with ill will. King v. Driscoll, 418 Mass. 576, 587 (1994); Alba, supra, at 314. Furthermore, the court can think of no reason why the termination of insubordinate or troublesome employees constitutes anything other than a legitimate corporate interest. Accordingly, the defendant’s, Fortin’s, motion for summary judgment on Count III (Interference with Contractual Relations) is ALLOWED.
B. Violation of G.L.c. 93A.
Hope contends that the defendants’ attempt to interfere with his collection of unemployment benefits, their intervention into his pending divorce and their subsequent attempts, to conceal their actions constitute unfair and deceptive acts pursuant to G.L.c. 93A. He seeks multiple damages, attorneys fees, costs and interest. The defendants assert that Hope’s allegations arise out of their employer-employee relationship, and thus, recovery is precluded.
Remedies of G.L.c. 93A, §11, are not available to employees in disputes against their employers, which arise from the employment relationship. Manning v. Zuckerman, 388 Mass. 8, 13 (1983); Weeks v. Harbor National Bank, 388 Mass. 141, 144 (1980). “Employees and employers are not engaged in trade and commerce with each other and as a result, disputes arising from an employment relationship between an employee and the organization that employs him, or between an employee and other members of that organization are not covered by the c. 93A remedies afforded in commercial transactions.” Manning, 388 Mass. at 13. The reference in section eleven to unfair and deceptive acts committed by “another person who engages in any trade or commerce” refers to marketplace transactions and not to claims arising from the ordinarily cooperative circumstances of the employment relationship. Id.
Hope’s reliance on the decision rendered in Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854 (1986), is misguided. In Wang, Business Incentives contracted to help Wang obtain certain tax benefits in exchange for one-third of their tax savings. Wang, 398 Mass. at 855. The court held that Wang’s failure to compensate Business Incentives their agreed upon one third and its subsequent termination of the contract constituted unfair and deceptive acts under c. 93A, §11. Id. at 859. Unlike in Wang, Double E’s hiring of Hope did not constitute a marketplace transaction for the performance of a valuable service. Double E hired Hope as an employee at will and not a contractor. Because Hope and Double E’s relationship was one between employer /employee rather than mer *654 chant/consumer, Hope is precluded from recovery under section eleven.
Similarly, the court is not persuaded by Hope’s contention that the defendants’ alleged actions entitle him to damages under section nine of the statute. Section nine allows any person, other than a person entitled to bring an action under Section eleven, who has been injured by another person’s unfair or deceptive acts in the conduct of any trade or commerce to bring an action in the Superior Court. G.L.c. 93A, §§2(a), 9(1).[8] As described above, any actions attributed to the defendants did not take place during, or as the result of, a commercial transaction. Accordingly, the motions for summary judgment ón behalf of the defendant, Double E, and the defendant, Fortin, on Count IV (Violation of G.L.c. 93A) axe ALLOWED.

ORDER

Based on the foregoing, it is hereby ORDERED that the defendant’s, Double E’s, and the defendant’s, Fortin’s, motion for summary judgment on Count I (Breach of Contract) is DENIED. The defendant’s, Double E’s, motion for summary judgment on Count II (Intentional Infliction of Emotion Distress) is ALLOWED, and the defendant’s, Fortin’s, motion for summary judgment on Count II (Intentional Infliction of Emotional Distress) is DENIED. The defendant’s, Double E’s, and the defendant’s, Fortin’s, motion for summary judgment on Count III (Interference with Contractual Relations) is ALLOWED. The defendant’s, Double E’s, and the defendant’s, Fortin’s, motion for summary judgment on Count IV (Violation of G.L.c. 93A) is ALLOWED.

 The 1987 agreement provided:
8. Employment at Will. I agree that my employment with the Company is “at will" and either the Company or I may terminate my employment with the Company at any time with or without cause upon written notice delivered in person or mailed by certified mail, return receipt requested to the residence or business address of the other party.
Additionally, Hope’s deposition testimony indicates that he signed and received an employee handbook from Double E in March of 1988. The testimony indicates that the handbook provided for at-will employment and specified that any oral representations or assurances to the contrary were made without the authority of Double E. The employment at-will provisions contained within the handbook did not require written notice prior to termination of employment.

 The 1987 agreement provided:
9(a) No Other Agreements. This Agreement represents the sole agreement between the company and myself, and there are no other agreements oral or written, related to the subject matter hereof. The terms of my continuing employment compensation benefits have been confirmed and agreed to by me in connection with this Agreement, and, together with the nature of my Activities, may be amended by subsequent agreement between me and the Company without reference to this agreement and without altering the terms hereof unless specific reference hereto is made therein. I agree that any attempted modification of this Agreement by any employee or agent of the Company will not be effective unless it is done by written amendment signed by an officer of the Company and me.

 The defendants contend that, upon tendering his oral resignation, Hope informed Fortin that he would continue his employment at Double E for a period of nine months in order for Double E to find a suitable replacement for him. Double E claims that they requested that Hope memorialize his intention to resign from Double E in nine months in writing, but they never received his written resignation. Hope contends that he merely intended to resign from the position of Vice President of Engineering and did not terminate his employment with Double E.

 The defendants contend that Fortin merely accepted the resignation that Hope had tendered nine months prior. They further argue that, upon Double E’s acceptance of his resignation, Hope was required to sign change of insurance benefit documents which effectively put him on written notice of the termination of his employment.

 Hope alleges that his termination did not result from the financial condition of Double E. Rather, he alleges that his termination resulted from Fortin hearing statements attributed to him which he perceived as slanderous and challenges to his authority and management of the company.

 Although Hope’s Complaint does not specifically allege that the defendants maliciously intervened during the pendency of his divorce, his opposition to this motion and the attached affidavits demonstrate that he may be entitled to relief under this theory. See Mass.R.Civ.P. 8(f) (“All pleadings shall be so construed as to do substantial justice”); Cacciola v. Nellhaus, 49 Mass.App.Ct. 746, 750 (2000) (“A complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate”) (quoting Nader v. Citron, 372 Mass. 96, 98 (1977)).

 G.L.c. 152, §24 (1988 ed. & Supp. 2000) provides in pertinent part:
An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self insurer, if the employee shall not have given the said notice within thirty days of the time said employer became an insured person or self insurer.
G.L.c. 152, §1(7A) (1988 ed. & Supp. 2000) provides that “(n)o mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be personal injury within the meaning of this chapter.”

 G.L.c. 93A, §2(a) (1997 ed. & Supp 2000), provides: “Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” Chapter 93A, §11, provides in pertinent part: “Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, ... as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . may . . . bring an action in the superior court...”